[Civ. No. 38735. Second Dist., Div. Five. Nov. 9, 1971.]

LARRY QUINCY FOGG, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Richard S. Buckley, Public Defender, James L. McCormick, James P. McGarry and Edward S. Van Gelder, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Joseph P. Busch, Jr., District Attorney, Harry Wood, and Daniel L. Lieberman, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**KAUS, P. J.**—After respondent's denial of petitioner's motion to dismiss an information charging him with four counts of burglary, petitioner (hereinafter called defendant) applied to this court for a writ of prohibition against the impending trial. We granted an alternative writ and issued a temporary stay pending our consideration of the matter.

## PROCEDURAL FACTS

In September 1966 defendant pleaded guilty to the four burglary counts before the magistrate. No preliminary hearing was therefore held and the case was certified to the superior court. (Pen. Code, § 859a.) He was sentenced to state prison. Apparently he was later paroled, for the record of this court indicates that on September 24, 1969, he was again sentenced to prison for a burglary allegedly committed on April 8 of that year.[1]

In 1970 defendant applied for a writ of habeas corpus to this court. The application concerned itself only with the 1966 conviction. He was successful, and in an unpublished opinion division one of this court ordered that the writ be granted "without prejudice to the right of the People to institute further proceedings in accordance with law."[2] That decision became final on March 5, 1971, 60 days later. (Cal. Rules of Court, rule 24 (a).)[3] Ten days thereafter the superior court transferred the case back to the municipal court, presumably for a preliminary hearing. Unaccountably on April 5, 16 days before that hearing, 4-count information charging the burglaries to which defendant had pleaded guilty in 1966 was filed in the superior court.[4]

Early in April defendant, in the municipal court, moved for a dismissal of the case, relying chiefly on *People* v. *Guaracha,* 272 Cal.App.2d 839 [77 Cal.Rptr. 695]. The motion was denied. The preliminary hearing was set for April 21. On that day defendant renewed the motion, again relying on *Guaracha.* It was again denied.

Up to that point the defendant had been represented by the public defender. Defendant then, in very articulate fashion, explained to the court that he had no confidence in the public defender whose inattentiveness in 1966 had cost him "5 years of [his] life." He pointed out that while in prison he had represented himself and requested to be permitted to represent himself henceforth. The motion was denied before its echo

---

[1]Defendant appealed that conviction, but it was affirmed in an unpublished opinion filed December 10, 1970. (*People* v. *Fogg,* 2d Crim. No. 17612.)

[2]The basis for granting the writ was that, in 1966, defendant had not been adequately represented by counsel. The attorney involved was not a member of the public defender's office.

[3]The district attorney, appearing for the real party in interest, claims that on March 3, 1971, he obtained an order removing the defendant from the Department of Corrections to the Los Angeles County jail. Defendant was, of course, still confined because of the 1969 conviction. We have been unable to substantiate this statement from the record; however it is immaterial to our disposition.

[4]Defendant makes nothing of this procedural oddity. No further information was filed after defendant was eventually bound over by the municipal court. In the superior court he once successfully demurred to the information and an amendment thereto was ordered filed.

could have died down, the magistrate having made no inquiry whatever of defendant's ability to represent himself. The preliminary hearing then proceeded.

## THE PRELIMINARY HEARING

Four victims of the various burglaries adequately established the corpus delicti of the crimes. Defendant's involvement was established with respect to counts I and II by evidence that fingerprints lifted at the scene matched prints obtained from defendant on the day of the preliminary hearing.

Defendant had been arrested on September 9, 1966, on the basis of an arrest warrant alleging that he had possessed marijuana for sale. (Health & Saf. Code, § 11530.5.) Although the warrant was challenged at the preliminary hearing, the People never did come up with an affidavit complying with the law as explained in *People* v. *Sesslin*, 68 Cal.2d 418, 422-426 [67 Cal.Rptr. 409, 439 P.2d 321].[5]

Nevertheless the magistrate at the preliminary hearing, who, unlike the magistrate who issued the warrant in 1966, had the benefit of *Sesslin*, ruled that the arrest was legal.[6]

The evidence further disclosed that at the scene of the arrest, the arresting officer advised defendant of his constitutional rights. Defendant then confessed to having committed over 100 burglaries. Two days later the officer told defendant that he had him "made on two print jobs" and gave him the location of the burglaries in question. Defendant then confessed to those two burglaries (counts I and II) as well as the two where no fingerprints had been found (counts III and IV).

## CONTENTIONS

Defendant contends that the writ of prohibition should be granted for the following reasons: 1. the delay after the granting of the writ of habeas corpus on January 4, 1971, deprived him of his right to a speedy trial; 2. the fingerprint evidence was illegally obtained; 3. his confessions were the product of an illegal arrest; and 4. the magistrate failed to ascertain whether he was capable of waiving his right to counsel.

[5]At the oral argument before us it was conceded that the warrant was defective and defendant's arrest illegal. The concession appears proper.

[6]The ruling was made in the middle of counsel's *voir dire* examination of the arresting officer. It effectively cut off further questioning.

## DISCUSSION

### Speedy Trial

■ In *People* v. *Guaracha,* 272 Cal.App.2d 839 [77 Cal.Rptr. 695], the defendant, after a conviction for a violation of section 11500 of the Health and Safety Code and sentence to state prison successfully petitioned the Court of Appeal for a writ of habeas corpus. The decision became final on December 17, 1967. As in the case at bar the habeas corpus proceeding did not free the defendant. Instead the superior court was ordered to resentence him. Nothing, however, was done until April 18, 1968, when the defendant was returned to the sentencing court. The resentencing procedure would have involved a hearing with respect to the validity of two prior convictions. On May 27, 1968, the trial court ordered the priors dismissed on the ground that there had been too much delay. The People appealed, but to no avail. Division one of this court held that the delay of 122 days between the time when the habeas corpus opinion became final and the first stirrings in the superior court denied Guaracha his constitutional right to a speedy trial. (U. S. Const., 6th Amend.; Cal. Const., art. I, § 13.) It recognized that no California statute purports to prescribe the time within which a defendant must be brought to trial after a partially successful habeas corpus proceeding, but it did note that the time involved in the case was more than twice the statutory 60-day limit prescribed by section 1382 of the Penal Code.

In the case at bar the question is not whether the prosecution was guilty of excessive delay in bringing the matter to trial. After the habeas corpus petition became final the case was not ready for trial, since no preliminary hearing had ever been held and it was therefore necessary to return the matter to the municipal court. This was done 10 days after the habeas corpus decision became final on March 5, 1971. We hold that there was no violation of the right to a speedy trial.

Defendant argues throughout as if the date we should look at were January 4, 1971, when the habeas corpus opinion was filed. He ignores that it did not become final until the last day on which the Supreme Court could have ordered a hearing, either on petition or on its own motion. That day, of course, is March 5. Just as in *Guaracha* the court paid little heed to the date when the Court of Appeal opinion was filed, so here we are not concerned with the January date.

### The Fingerprint Evidence

■ Defendant cannot claim that the fingerprints obtained from him on the date of the preliminary hearing were obtained during an illegal

detention. As noted, he was still serving a prison sentence for the 1969 burglary. His argument is more subtle: he claims that the record indicates that he was fingerprinted after his illegal arrest in 1966, that those prints were used to connect him with the burglaries charged in counts I and II and that but for the illegally obtained prints he never would have been connected with any of the burglaries.[7] The logical extension of that argument is that he can never be prosecuted for the burglaries of the houses where his prints were found.

To this there are several answers. First, the record does not really show that prints obtained after the 1966 arrest were used to connect defendant with the two burglaries. His prior record may have been such that his prints were not collectors' items in law enforcement circles. The arrest took place more than a month after the burglary charged in count I and defendant could have been identified as the burglar even before his arrest on an unrelated charge.

Further and foremost, it does not seem to be the law that the prosecution cannot proceed with legally obtained prints, simply because an illegally obtained set first revealed the defendant as a suspect.

At the time of the preliminary hearing this prosecution was in the same procedural posture as was the case in *Davis* v. *Mississippi,* 394 U. S. 721 [22 L.Ed.2d 676, 89 S.Ct. 1394] after the reversal of the conviction by the United States Supreme Court. In *Davis* the police seeking to identify the perpetrator of a rape whom the victim could only describe as a Negro youth, indiscriminately took 24 such youths to headquarters to have them fingerprinted. Davis' prints matched latent prints obtained at the victim's house. He was then tried and convicted with the use of the prints which, according to the Supreme Court, had been illegally obtained. If the position of defendant in the case at bar has merit, the court in *Davis* should have prohibited any further prosecution. Instead, it simply reversed the judgment of affirmance by the Mississippi Supreme Court. Lest there be any question that the decision contemplated a retrial with fingerprint evidence, we refer to the dissenting opinion by Justice Stewart in which he points out that the reversal was a "useless . . . gesture," since at the first trial the victim had identified Davis and there now existed ample probable cause to detain him and obtain a new set of prints. That, of course, was done in the present case on the day of the preliminary

[7]Though not articulated in this fashion, the further argument appears to be that he would not have confessed to the burglaries charged in counts III and IV, had he not been confronted with the fingerprint evidence and confessed to the burglaries charged in counts I and II.

hearing when defendant was legitimately in custody because of the 1969 conviction.

## The Confessions

■ As noted (see fn. 5, *ante*) the People now concede that, on the record before us, the 1966 arrest must be deemed to have been illegal. We do not interpret the concession as also conceding that the taint of the illegality was not dissipated.

We must hold that on the state of the record made at the preliminary hearing the confessions were inadmissible. As noted, (see fn. 6, *ante*) the magistrate ruled that the arrest was legal before the defense had completed its examination of the arresting officer, thereby preventing the facts from being fully developed. Further, it is obvious that the magistrate, having held the arrest legal, never even considered the question of dissipation of illegality. Since no evidence other than the confession connects defendant with the burglaries charged in counts III and IV, the writ must be granted as to those counts.

## The Right of Self-Representation

■ While we do not have a complete record of the municipal court proceedings between March 15, the day the case was transferred to that court, and April 21, the day of the preliminary hearing, it does appear that defendant and the deputy public defender had been in court several times before April 21. We have no record that defendant asked to be permitted to represent himself on any of those occasions. Even on April 21 he permitted the deputy to resubmit the motion for a dismissal and did not voice any desire to represent himself until that motion was denied and the People were ready to proceed to put on testimony. Under such circumstances we cannot say that it was error for the magistrate not to stop the proceeding in its tracks by conducting an inquiry into defendant's ability to waive the right to counsel. (*People* v. *Ochoa,* 9 Cal.App.3d 500, 506-507 [88 Cal.Rptr. 399]; *People* v. *Weston,* 9 Cal.App.3d 330, 336 [87 Cal.Rptr. 922]; cf. *People* v. *Johnson,* 13 Cal.App.3d 1, 3 [91 Cal.Rptr. 203] [three requests before start of preliminary hearing].)

## DISPOSITION

The alternative writ of prohibition is discharged. The peremptory writ of prohibition is denied with respect to counts I and II.

Let a peremptory writ of prohibition issue prohibiting the respondent

court from conducting any further proceedings with respect to counts III and IV in the matter of People v. Fogg, being action number A-214377 in said court, except to dismiss said counts.

Stephens, J., and Reppy, J., concurred.

A petition for a rehearing was denied November 22, 1971, and the opinion was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court was denied January 6, 1972.