663 P.2d 244

STATE of Arizona, Appellee,

v.

Roger MASTER, Appellant.

No. 1 CA–CR 5559.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 17, 1983.

Rehearing Denied March 25, 1983.

Review Denied April 19, 1983.

See also, 127 Ariz. 210, 619 P.2d. 482.

---

Robert K. Corbin, Atty. Gen., by William J. Schafer III, Chief Counsel, Crim. Div., Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

Roger Master was charged in a 1978 indictment with three counts of first degree rape, two counts of first degree burglary, and one count of lewd and lascivious acts. Jury trial was waived and the matter was submitted to the trial court on the grand jury transcripts, police departmental reports, testimony and argument on various motions, and all documents in the court's file. The trial court found Master guilty of all charges. However, the supreme court reversed the convictions and sentences, holding that a roll of money taken from the appellant at the time of the initial stop should have been suppressed as the fruit of an illegal stop and search. *State v. Master,* 127 Ariz. 210, 619 P.2d 482 (1980). The supreme court left open to the trial court on remand the determination of whether appellant's subsequent arrest and detention were based on independent sources or re-

sulted from the illegal stop and search. The supreme court thus made no ruling as to the legality of the eventual arrest and fingerprinting of appellant.

After remand, a conflict was found in the Maricopa County Attorney's Office because of personnel changes which occurred after the first trial. The Maricopa County Attorney's Office was disqualified from prosecuting the case and the Arizona Attorney General's Office was substituted as counsel for the prosecution. Eventually, because of further conflicts, the case was transferred from the attorney general's office to the Yuma County Attorney's Office for prosecution and then to the Phoenix City Attorney's Office as prosecuting agency. Pursuant to a plea agreement between the Phoenix City Attorney's Office and the defense, appellant tendered a plea of guilty to one count of first degree rape. Under the agreement appellant was to receive a sentence of not less than twenty years nor more than twenty years and one day imprisonment and the state would dismiss all other counts and the allegation of a prior conviction. The trial court rejected the plea agreement and reset the trial date. It also granted the City Prosecutor's motion to withdraw and private counsel, J. Douglas McVay, was substituted as attorney for the state.

Prior to trial, the court held an evidentiary hearing on several pending motions including a motion to suppress. The court granted the motion in part, suppressing numerous items of evidence, but denied it as to other items as will be discussed hereafter. Although there was evidence from the police that following the initial illegal stop the appellant voluntarily accompanied them to the police station to be photographed and fingerprinted, it is implicit in the trial court's ruling suppressing some items of evidence that this procedure, in addition to the initial stop, constituted an illegal arrest.

The matter proceeded to a jury trial and Master was found guilty of all six counts charged. Following denial of a motion for new trial and entry of judgment of guilt, Master was sentenced to consecutive terms of thirty-two to fifty-two years imprisonment on the rapes, twelve to fourteen years imprisonment on the burglaries, and four to five years on the lewd and lascivious acts. We have jurisdiction of this appeal from the judgments of conviction and sentences. A.R.S. §§ 12–120.21(A)(1), 13–4031, –4033.

■ Appellant first contends that the trial court erred in not obtaining a valid waiver of his right to an automatic change of judge after the plea was rejected. Rule 17.4, Ariz.R.Crim.P., provides as follows:

g. Automatic Change of Judge. If a plea is withdrawn after submission of the pre-sentence report, the judge, upon request of the defendant, shall disqualify himself, but no additional disqualification of judges under this rule shall be permitted.

After the court indicated to the parties that he was not going to accept the plea agreement, the following exchange occurred in court:

MR. DAIRMAN: Dennis Dairman with the defendant. I have explained to the defendant that it is the Court's intention not to accept the plea agreement. And I have advised my client it is my recommendation that he proceed to disqualify the Court and proceed for [sic] another Judge.

And my client advised me no, he desires to go to trial and does not wish to follow my recommendations, and we have—I believe the last day for trial is June 11.

THE COURT: So you wish the matter sent out to another court?

MR. DAIRMAN: No, my client doesn't want that to occur and he wants to go to trial as soon as possible, June 11.

THE COURT: You understand you have a right to another Judge if you wish to exercise it?

THE DEFENDANT: Yes.

THE COURT: You understand that?

THE DEFENDANT: Yes.

THE COURT: The record reflect, as I have informed counsel, that the plea agreement tendered to the Court is rejected.

The defendant's plea of guilty is set aside.

The plea of not guilty to all charges is reinstated.

Despite this exchange, it is appellant's contention that under the circumstances the trial court should have been required to extract a knowing and intelligent waiver of appellant's right to an automatic change of judge; he should have been made aware of why he could have the court disqualified; and he was not advised that the right existed because the trial court had taken his plea of guilty and had heard a factual statement of the crime, had read the pre-sentence report, and could therefore no longer be a neutral observer.

We disagree with appellant's contention. The plain language of the rule indicates that the trial court need only afford a defendant the opportunity to exercise his right to an automatic change of judge. There is no requirement that the court ascertain that a defendant's express waiver of this right is knowing and intelligent or that he is apprised of all the ramifications of such a decision. Appellant has cited no authority for this proposition, and we know of none.

■ Appellant next contends that the trial court erred in denying his motion to dismiss based on the misconduct of the Maricopa County Attorney's Office which occurred after that office had been disqualified and the case had been transferred to the Phoenix City Prosecutor's Office. The Maricopa County Attorney's Office was disqualified because a former deputy public defender, who had become a deputy county attorney, would have knowledge of Master's case. The record indicates that an attorney for the Maricopa County Attorney's Office contacted the Assistant Phoenix City Prosecutor assigned to prosecute the case. He indicated displeasure with the proposed plea agreement to the city prosecutor. Also, an employee of the Maricopa County Attorney's Office Victim-Witness Program,[1] who

had not at that time been disqualified from further participation in the case, also contacted the assistant city prosecutor and indicated that she was upset with the proposed plea agreement. The deputy county attorney's disapproval of the proposed agreement was not communicated to the probation officer who prepared the presentence report or to the trial court. The victim-witness counselor, however, communicated her disapproval, and that of the victim, to the probation officer and to the trial court via a letter attached to the presentence investigation report. At the hearing on the motion to dismiss, the trial court stated specifically that the actions of these individuals had no bearing on his decision to reject the plea agreement. The deputy county attorney should not have participated in the case in any way after his office was disqualified. Further, while the victim-witness counselor had not yet been disqualified from acting as liaison, as an employee of the Maricopa County Attorney's Office, she should not have communicated her disapproval of the plea bargain. *State v. Latigue,* 108 Ariz. 521, 502 P.2d 1340 (1972), notes that even the appearance of impropriety or unfairness cannot be permitted. However, the *Latigue* case did not consider the issue of whether dismissal is a proper sanction. In *State v. Rupp,* 120 Ariz. 490, 586 P.2d 1302 (App.1978), it was held that dismissal was not required where participation by a previously disqualified prosecutor's office was primarily procedural.

■ While the activities of the Maricopa County Attorney's Office cannot be classified as procedural, we believe that under the circumstances of this case the trial court did not err in denying appellant's motion to dismiss the numerous and serious charges because of improper conduct of individuals who were not directly involved in prosecuting. Under any circumstances, the trial judge would have been entitled to know what the victims thought of the plea

---

1. The employee of the victim-witness program acted as a counselor and liaison between the

rape victim and the judicial system.

agreement. We see no actual prejudice to appellant, as the trial court indicated its decision to reject the plea agreement was not based on the disapproval of that agreement by members of the county attorney's staff. From the very stringent sentence ultimately imposed upon appellant, it appears rather that the trial court felt that a twenty-year sentence was an inappropriate resolution of this particular case. The record easily supports the view that a sentence of considerably more than twenty years was warranted.

Appellant finally contends that the trial court erred in allowing the state to fingerprint him immediately before trial and in admitting those fingerprints in evidence. This contention requires a knowledge of the facts giving rise to appellant's apprehension. In the early morning hours of December 29, 1977, a Phoenix police officer patrolling east Van Buren saw a green Oldsmobile with Texas license plates in a motel driveway. The appellant appeared to the officer to have gotten out of the car on the passenger side and was walking around the back of the car in the direction of a convenience store. The appellant kept his left hand in his pants pocket. As the police officer turned his car around to get a better view, the appellant abruptly reversed his direction and walked back to the driver's side of the car. The policeman accosted the appellant and reached into his pocket and removed a roll of money. The officer did not initially connect the appellant with the crimes with which he was eventually charged but after a few minutes contact with him, the officer recalled a bulletin that he had seen earlier that same day regarding two rapes. In the officer's opinion the appellant, who could furnish no identification, matched the description of the rapist so he took him to the police station to photograph him and take his fingerprints. Ultimately, the appellant was arrested pursuant to a complaint and received an initial appearance at which bond was set.

Appellant's primary argument, based on *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), is that the fingerprints were obtained as a result of the initial illegal stop, rather than by means sufficiently distinguishable from the stop so that the taint of the official lawlessness could be considered purged.[2]

▮ Under *Wong Sun v. United States* the test of excludability is not whether the evidence would not have come to light "but for" the illegal police action, but whether the evidence was derived from exploitation of the illegality, rather than by means "sufficiently distinguishable to be purged of the primary taint." 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455. In *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the Supreme Court held that in-custody statements which stem from an illegal arrest are not *per se* admissible merely because a defendant is given the *Miranda*[3] warnings prior to making a statement, *i.e., Miranda* warnings do not by themselves, under *Wong Sun,* always purge the taint of an illegal arrest. While we are not concerned with suppressing statements *Brown v. Illinois* does provide some guidelines as to how the *Wong Sun* doctrine should be applied. Courts in determining whether the taint is purged should look to the following factors: (1) the proximity in time of the arrest to the challenged evidence; (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct.

---

2. To whatever extent appellant's argument is based on A.R.S. § 13–3905 (formerly § 13–1424), the reliance is misplaced. This statute gives peace officers a method for obtaining a court order for temporary detention of an individual, where probable cause for an arrest does not exist, during the course of the investigation of a crime, for the purpose of obtaining evidence of identifying physical characteristics. That statute is not in issue here because the police didn't invoke it. We do note, however, that Rule 15.2(a), Ariz.R.Crim.P., provides for pretrial disclosure of physical evidence by a defendant, including fingerprints, after the filing of an indictment or information. The trial judge had authority under this rule to enter the order he did.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Turning to the application of these factors to this case, we observe that over three years passed between the illegal arrest and the fingerprinting ordered by the court. In the factual context of this case, we do not consider the passage of time significant to the question of attenuation.

As to the purpose and flagrancy of the official misconduct, we find that while the arrest was illegal it was not the most aggravated kind of sustained and calculated abuse of rights that is sometimes encountered.

It is the presence of an intervening circumstance that is most significant to the resolution of this question. At the time the fingerprints were taken, the appellant was lawfully in custody pursuant to a judicial finding of probable cause. We have not lost sight of the fact that but for the illegal arrest the appellant may never have been lawfully in custody or subject to a judicial order to have his fingerprints taken. However, as *Wong Sun* and *Brown* make clear, the "but for" test does not apply.

In *Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), the defendant was illegally arrested in his home without a warrant. After the arrest, he received an initial appearance before a judicial officer where he was advised of his rights and bail was set. Thereafter he was placed in a lineup where the victim identified him. He subsequently moved to suppress the identification as the fruit of an illegal arrest. The United States Supreme Court held that the evidence could be used because the lineup was procured as the result of means sufficiently distinguishable from the illegal arrest to be purged of the primary taint. A number of other cases have found identification evidence procured after an illegal arrest to be admissible if it was obtained by judicial order or after a judicial order had been issued for the detention of the defendant. *See Taylor v. State,* 399 So.2d 881 (Ala.1981); *People v. Pleasant,* 54 N.Y.2d 972, 446 N.Y.S.2d 29, 430 N.E.2d 905 (1981); *People v. Sampson,* 86 Ill.App.3d 687, 41 Ill.Dec. 657, 408 N.E.2d 3 (1980); *People v. Bueno,* 87 Cal.App.3d 163, 151 Cal.Rptr. 55 (1978); *Fogg v. Superior Court,* 21 Cal.App.3d 1, 98 Cal.Rptr. 273 (1971); *People v. Solomon,* 1 Cal.App.3d 907, 82 Cal.Rptr. 215 (1969).

Appellant places great reliance on *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). There, the Supreme Court considered fingerprint evidence obtained as a result of a police dragnet. Approximately twenty-four black youths were detained, questioned briefly, fingerprinted and then released without charge. The court held that where the police made no attempt to employ procedures which might comply with the requirements of the Fourth Amendment, where the detentions were not authorized by a judicial officer, where the defendant was unnecessarily required to undergo two fingerprinting sessions and was not merely fingerprinted during the first detention but was also subjected to interrogation, that the fingerprints obtained from him during the first detention were the product of the illegal detention and were improperly admitted into evidence in a state rape prosecution. Several comments about the decision are appropriate. The fingerprinting was done by police action rather than by judicial order after a finding of probable cause. The case contained no issue regarding the *Wong Sun* doctrine and whether the primary taint had been purged. Finally, Justice Stewart, in dissent, categorized the reversal as a useless gesture because at the trial the victim had identified the defendant and there was therefore ample probable cause existing to detain the defendant and take his fingerprints again.

We conclude that the trial court did not err in refusing to suppress the fingerprints taken immediately before trial pursuant to judicial order. As a matter of law, the evidence was not obtained by exploitation of the initial illegality, but rather by means "sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States.*

The judgments of conviction and the sentences are affirmed.

CORCORAN, P.J., and FROEB, J., concur.