[Crim. No. 25091. Second Dist., Div. One. Jan. 31, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
CLYDE ARTIS PARKER, Defendant and Appellant.

**COUNSEL**

Donald W. Beacham, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Theodora Berger, Howard J. Schwab and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THOMPSON, J.**—In this appeal from a conviction of first degree murder, appellant contends that: (1) a confession received in evidence was obtained in violation of his right to remain silent and his right to counsel; (2) evidence introduced at trial was the product of an illegal search and seizure; (3) the court committed reversible error by failing to order a present sanity hearing; and (4) appellant was not represented by competent trial counsel. We conclude that the confession was obtained in violation of the rules of *Miranda* as amplified in *People* v. *Fioritto,* 68 Cal.2d 714, 719 [68 Cal.Rptr. 817, 441 P.2d 625]. Therefore, the judgment of conviction is reversed.

*Facts*

Eyewitness testimony, circumstantial evidence, an admission of appel-

lant to an acquaintance, and appellant's confession establish the following facts.

Appellant purchased an I.D. card and birth certificate from one John Joseph Walsh and assumed that identity. He then secured employment from Lynch Security which placed him at the Bank of California. Appellant planned a robbery of the bank and secured the help of three other individuals to carry out the plan. The scheme envisioned that the four conspirators would meet two Brinks trucks that were to deliver money at the bank at 6:30 p.m. on November 11, 1972. The conspirators would incapacitate the two guards, Thomas and Caillouet, who were scheduled to be on duty at the time, and take the funds.

Pursuant to the plan, appellant did not report for work on the 11th. At about 6:25 p.m. on that day, he entered the bank and asked Caillouet where Thomas was working. He was told that Thomas was on the second floor. Appellant went to the second floor locker room. He attempted to bind Thomas' hands with thumb cuffs. A struggle ensued and Thomas was shot and killed by appellant. Appellant fled and was arrested in Denver, Colorado, on November 26, 1972.

At trial, appellant moved to suppress a confession made by him and evidence that was seized pursuant to a warrantless search. The motions having been denied, appellant, after appropriate waivers, submitted the issue of his guilt upon the transcript of the preliminary hearing and testimony taken during both motions to suppress. He was found guilty of burglary, attempted robbery, and first degree murder. A new trial was granted appellant on the counts of burglary and attempted robbery. Those charges were then dismissed. This appeal relates to the remaining judgment of guilt of first degree murder.

## Confession

Appellant first contends that the confession received in evidence over his objection was obtained in violation of his Fourth and Fifth Amendment rights.

Appellant was apprehended by Denver, Colorado, police on November 26, 1972. At about 6:30 p.m. on that date, the Denver police sought to question him concerning the crime. Reading from a printed form, the Denver police advised appellant of his *Miranda* right. Rather than consenting to a waiver of the right, appellant wrote on the form space designated for signature of the "Person Advised," "You are in as much

of the dark as I am. I'll just wait." Two Los Angeles Police Department officers interviewed appellant in Denver on November 29 at about noon. They read his rights per *Miranda* and asked if he understood them. The interviewing officer asked appellant if he wished to talk about the crime. Appellant stated that he wanted to talk to "somebody." The officer asked who he meant by "somebody." Appellant replied that he wished to see a prison doctor or a psychiatrist. The officer arranged an interview for appellant with Dr. Jurjevich, the chief psychologist at the Denver County jail. Dr. Jurjevich spoke with appellant for about 10 minutes beginning at 2:45 p.m. The psychologist noted that appellant was "apparently under pressure, stress, and that's why he wanted to talk matters over with a psychologist or a minister, as he said. And the pressure was that he could not decide whether he would make a confession to the detectives or not." Dr. Jurjevich gave appellant no advice as to whether or not he should confess. Following the interview, however, Dr. Jurjevich told the Los Angeles police officers that he had "this boy ready to make his confession." Without repeating the *Miranda* warning, the officer then asked appellant if he would be willing to discuss his role in the "attempted robbery and murder." He responded that he would. After further questioning, appellant wrote out a confession.

Appellant argues that he having once asserted his right to counsel and to remain silent as enunciated in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and expanded in *People* v. *Fioritto,* 68 Cal.2d 714, 718-719 [68 Cal.Rptr. 817, 441 P.2d 625], subsequent questioning by the police which resulted in his confession was constitutionally impermissible. The contention has merit.

In *Fioritto,* our Supreme Court, quoting from *Miranda* but adding its own emphasis, stated: " 'Once [Miranda] warnings have been given, the subsequent procedure is clear. *If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.* At this point he has shown that he intends to exercise his Fifth Amendment privilege; *any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.* Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been *once invoked.*' " (68 Cal.2d at p. 718.)

In *People* v. *Randall,* 1 Cal.3d 948 [83 Cal.Rptr. 658, 464 P.2d 114], the California Supreme Court discussed application of the *Fioritto* rule to

the situation where interrogation is suspended when the suspect asserts his *Miranda* right but is subsequently resumed. The court distinguishes two situations in which a confession may be made after a cessation of questioning in response to assertion of the right to counsel or to remain silent: "(1) a change of mind on the part of the defendant prompted by the advice of counsel, his own psychological make-up, or similar facts; [and] (2) a change of mind prompted by continued interrogation and efforts to convince the defendant to communicate with the officers. The former is not proscribed by *Miranda,* nor by our application of its teaching in *Fioritto* and *Ireland.* 'The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated . . . . Volunteered statements of any kind are not barred by the Fifth Amendment . . . .' 'Not only did we affirm our adherence to this principle in the *Fioritto* case, but we also there indicated that even a defendant in *custody* might make statements admissible under *Miranda* if it were shown that such statements were the result of the defendants own initiative and did not arise in a context of custodial interrogation.' " (1 Cal.3d at p. 956, fn. 7.)

 The burden is upon the prosecution to establish that a confession obtained after *Miranda* rights have been asserted by the suspect is the result of a change of mind prompted by advice of counsel, his own psychological makeup, or similar facts. (Jefferson, Cal. Evidence Benchbook, §§ 23.2; 25.2, subds. (c), (d).)

 Here the record establishes that appellant asserted his *Miranda* right and establishes also that the prosecution failed in its burden of proof of preliminary facts requisite to the admissibility of a confession obtained after that assertion. *Miranda* rights are deemed asserted where "conduct reasonably appears inconsistent with a present willingness on the part of the suspect to discuss his case freely and completely with police *at that time.*" (*People* v. *Randall, supra,* 1 Cal.3d 948, 956, italics in opinion.) Appellant's response to the original *Miranda* warning by the Denver police and his subsequent request to see a doctor or psychiatrist prior to responding to the reinstituted questioning by the Los Angeles officers are both conduct inconsistent with a present willingness to discuss the case freely *at the time* of the questioning. The record is silent on the reason why, after consulting the prison psychologist, appellant elected to submit to further interrogation. While the psychologist testified that he did not advise appellant to confess, he also noted that appellant was under "pressure and stress" and could not decide whether to make a confession "to the detectives." It cannot be

inferred from the record that the pressure and stress were not those incident to custodial questioning.

The record being silent on the motivation for appellant's confession when questioning was resumed after he had asserted his *Miranda* right, *Fioritto* and *Randall* compel the conclusion that the trial court erred in denying appellant's motion to suppress evidence of the confession.[1] Despite the overwhelming evidence of appellant's guilt apart from the confession, that error per se requires that we reverse the judgment of conviction. (*People* v. *Fioritto, supra,* 68 Cal.2d 714, 720.)

## Validity of Search

The validity of the search which disclosed evidence incriminating appellant is an issue likely to arise on retrial. Viewed in the light most favorable to the ruling of the trial court denying appellant's motion to suppress that evidence, the record discloses the following. Possessed of information that "Joseph Walsh," the name used by appellant while he worked as a security guard at California Bank, was registered at the Howell Hotel on South Main Street, Officer David Shelton and his partner went to the hotel to interview Walsh. The officers asked the desk clerk if Walsh was registered at the hotel and for his room number. They were told that Walsh was a registered guest and that he had been living in several different rooms in the hotel. Proceeding to one room pointed out to them by the clerk the number of which corresponded with a number previously received, the officers knocked on the door and stated that they were police officers. The occupant of the room said, "Come on in." The officers entered with guns drawn. Inside the room, they saw Jonas Williams lying naked in the bed watching television. No one else was present. Ascertaining that Williams was not armed, the officers holstered their weapons. They asked Williams if he knew Joseph Walsh. Williams replied that he did. The officers then asked "if it was all right, did he mind if we looked around, and if we could search the room." Williams said, "Go ahead," and that it was all right with him. One of the officers asked Williams if they could look into the dresser in the room. He said, "I don't care." In a bureau drawer, they found a diagram of the bank and a note that said, "If you would like $200,000 or $100,000, meet me Saturday."

---

[1]For examples of a record supporting the inferences necessary to establish the preliminary facts requisite to the admissibility of a confession made after *Miranda* rights are asserted, see *People* v. *Miller,* 40 Cal.App.3d 228, 231-232 [114 Cal.Rptr. 779]. See also *People* v. *Carroll,* 4 Cal.App.3d 52, 56-57 [84 Cal.Rptr. 60] defendant initiated the subsequent interview provided he could first talk to his wife.

The record supports the validity of the search. ■ A search is not unreasonable if made with the consent of an occupant of premises who the officers reasonably and in good faith believe has authority to consent to their entry. (*People* v. *Smith*, 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222].) ■ Here Williams was the only occupant of the room. His presence naked in bed and watching television strongly indicated that he lived there. The record thus supports the implied finding that the officers reasonably and in good faith believed that Williams was the occupant of the room and authorized to consent to the search. The record also supports the fact that Williams' consent was given voluntarily and not in submission to authority. The voluntary nature of a consent to search must be determined from all of the surrounding circumstances. (*Schneckloth* v. *Bustamonte*, 412 U.S. 218 [36 L.Ed.2d 854, 93 S.Ct. 2041].) Here while the officers had entered the room with guns drawn, they had holstered their arms before interrogating Williams. Their request for permission to search was phrased in terms indicating that Williams could deny them permission and not in terminology indicating that absent that consent they would search anyway. On those facts, the trial court's inference of the preliminary fact necessary to the receipt of the product of the search in evidence cannot be disturbed on appeal.

### Other Contentions

Appellant's contentions of error in the trial court's failure *sua sponte* to order a hearing on present sanity and of ineffective representation by trial counsel are totally without support in the record. There is no evidence that appellant lacked capacity to stand trial and his representation by Deputy Public Defender Wisot was masterful in the preservation of the record upon which we reverse the judgment.

### Disposition

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied February 28, 1975, and respondent's petition for a hearing by the Supreme Court was denied March 26, 1975.