[Crim. No. 19802. First Dist., Div. Three. Oct. 7, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM HENRY BORBA, Defendant and Appellant.

COUNSEL

Luis M. Villarreal, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein, John Runde and Nancy Stewart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FEINBERG, J.—Appellant William Henry Borba was acquitted of burglary (Pen. Code, § 459) of the residence of Mark Lofgren and convicted of receiving stolen property (Pen. Code, § 496) of the same victim.

Mark Lofgren's house was burglarized sometime between 5 p.m. and 9:45 p.m., and part of his coin collection, consisting primarily of foreign coins but including American money having a face value of approximately $65, was stolen.

At about 11:30 p.m. the same night, appellant was arrested for drunk driving. During booking procedures, he was found to have two silver dollars (an 1883 and a 1976), two silver certificates, ten Jefferson nickels, two Roosevelt dimes, and a 1946 Lincoln penny in his pocket. Lofgren came to the police station and identified the 1883 silver dollar and the silver certificates. The arresting officer, who had participated in the burglary investigation, intended to question appellant about the drunk-driving incident but not about the burglary, which he would leave to detectives, and advised appellant of his Miranda[1] rights, which appellant refused to waive. It was then 2 a.m.

At 8:30 a.m., a detective who was unaware that appellant had invoked his Miranda rights, readvised appellant of same and obtained a waiver. In response to questioning about the burglary, appellant denied having committed it and said that 10 days to 2 weeks earlier a Brad Snyder had given him the money as payment for a ride to San Jose.

[1]Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

Asked where Snyder got the money, appellant said "he felt he [Snyder] committed a burglary in the Aptos area and had received them from that." Without objection by appellant, the detective testified that a sheriff's detective had been unable to connect the coins with any other burglary.

Appellant presented at trial the testimony of a professional numismatist to the effect that, whereas none of the money found in his possession would be likely to be in anyone's possession at a particular time (with the possible exception of the nickels), any of it would be likely to be found in a basic coin collection—i.e., the money was not in general circulation but not rare either. In particular, he estimated that 1 out of every 15 or 20 silver dollars is an 1883.

The judge, at appellant's request, gave the jury an instruction to the effect that, before considering appellant's statement to the detective, it had to find, beyond a reasonable doubt, that the money found in his possession was Lofgren's—i.e., once having found that, it could treat appellant's statement that he knew the money was stolen as evidence of his guilt. The court also instructed the jury, in terms of CALJIC No. 2.15 (3d ed. 1970), that the mere possession of recently stolen property is not sufficient evidence of guilt of burglary or receiving.

I

Appellant contends that the court erroneously admitted evidence of his admission of knowledge of the stolen character of the money. Relying on *People* v. *Pettingill* (1978) 21 Cal.3d 231 [145 Cal.Rptr. 861, 578 P.2d 108], he argues that his invocation of his *Miranda* rights when first advised by the arresting officer barred questioning by the detective, even though the latter was ignorant of the invocation of rights and obtained a waiver. Appellant concedes that his attorney did not object to the statement when it was introduced and that at some undefined point, off the record, the attorney had moved to exclude the reference to the Aptos burglary, not on *Pettingill* grounds but on the ground of hearsay. Appellant maintains that the *Pettingill* issue was raised in the trial court, and thus preserved for appeal by being made the basis for a new trial motion.

Respondent does not press the "failure to object" point, obviously because, if the point were well taken, the People would be out of the

*Pettingill* frying pan and into the incompetence-of-counsel fire. Respondent says that "this court may well decide to consider the issue" because "appellant's trial Counsel did raise the issue in his motion for a new trial." But making *Pettingill* objection the basis for the motion for new trial did not cure the failure to make the objection at trial. A motion for new trial may be made only on the statutory grounds; Penal Code section 1181 itself provides that "[T]he court may...grant a new trial, in the following cases only:" One of the statutory grounds is "5. When the court...has erred in the decision of any question of law arising during the course of the trial, . . ." Although the question of the admissibility of appellant's statement arose during the trial, the question of its admissibility *under Pettingill* did not arise and, therefore, the court cannot have erred in deciding any question of law arising during the course of the trial.

There was no error in admitting appellant's statement to the police because appellant did not object to its admission on proper grounds.

## II

■ If the objection were not properly made, then, appellant urges, his trial attorney was incompetent because he was admittedly ignorant of *Pettingill*.[2]

■ In *Pettingill*, a defendant was arrested and advised by the arresting officer of his *Miranda* rights, which he refused to waive. Two hours later, the same officer readvised the defendant of his rights, and the defendant continued to refuse to waive them. Three days after the arrest, a detective from another agency, who was aware of the defendant's two refusals, confronted him with evidence of his guilt as to another and unrelated crime, readvised him of his rights, and obtained a waiver and confession. Ruling the confession inadmissible, the Supreme Court reiterated the rule of *People* v. *Fioritto* (1968) 68 Cal.2d 714, 719 [68 Cal.Rptr. 817, 441 P.2d 625] ["By his refusal to waive his constitutional rights initially, defendant indicated that he intended to assert his

---

[2]The attorney said: "[W]e have sought to raise this issue by a Motion for a New Trial for the simple reason that I was not aware of the *Pettingill* decision the first time. [¶] I subsequently learned of the *Pettingill* decision, and it was upon that learning that we filed a motion." The court subsequently absolved the attorney of any intent to "hang back and use this as your ace in the hole if you lose," and the district attorney forswore any such accusation.

rights—the privilege had been *once invoked*—and all further attempts at police interrogation should have ceased"] and its progeny—see especially *People* v. *Ireland* (1969) 70 Cal.2d 522, 537 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323] ["[T]he *cessation* of custodial interrogative processes upon assertion of the privilege is one of the 'protective devices' which must be employed 'to dispel the compulsion inherent in custodial surroundings' [citation], and any statement obtained without the use of that device is not admissible"] and *People* v. *Randall* (1970) 1 Cal.3d 948, 958 [83 Cal.Rptr. 658, 464 P.2d 114] ["After the initial assertion of the privilege, the defendant is entitled to be free of police-initiated attempts to interrogate him. Any statements made by a defendant in response to such questioning cannot be characterized as voluntary."]

The only meaningful distinction between *Pettingill* and the present case is that here the detective who obtained the confession was ignorant of appellant's earlier refusal to talk to the arresting officer, while there the detective knew of the earlier refusal.

The Supreme Court in *Pettingill* did declare, however, that the ignorance of the second officer is an extraneous consideration. In explaining why it declined to follow *Michigan* v. *Mosley* (1975) 423 U.S. 96 [46 L.Ed.2d 313, 96 S.Ct. 321], the court showed how the federal rule provides less protection of civil liberties in two respects, one being that it injects uncertainty in the law and, as an example of such uncertainty, noted that under *Mosley* the second officer's ignorance might be a factor. (21 Cal.3d at p. 250.) In that context, the court quoted with apparent approval *People* v. *Milton* (1969) 270 Cal.App.2d 408, 415-416 [75 Cal.Rptr. 803]: "To say that the ignorance of the second officer concerning the earlier interview shields the second interview from attack not only would open the door to evasions by the police but it ignores the reason for the *Fioritto* rule, which is to prevent the police from wearing down a prisoner's resistance by repeated pressuring until he finally makes the statement desired in order to get peace. That pressure exists whether or not the successive would-be interrogators are acting in concert for that purpose, or are acting independently—it is the effect on the prisoner that *Fioritto* seeks to avoid." *People* v. *Ireland, supra,* 70 Cal.2d at page 537, footnote 12, also regarded the ignorance of a second officer of a first assertion of rights as an immaterial factor. (See *People* v. *Randall, supra,* 1 Cal.3d at p. 957, fn. 10; cf. *People* v. *Lopez* (1979) 90 Cal.App.3d 711 [153 Cal.Rptr. 541].)

It is true that *Milton* and *Ireland* involved successive interrogations as to the *same* crime whereas, here, the second interrogation was as to a separate and unrelated crime. It is also true that what the court said in *Pettingill* concerning the ignorance of the officer conducting the interrogation of the unrelated crime as to the defendant having invoked his right to remain silent in connection with a different crime, is dicta, since, in fact, the officer did know, as was true in *Randall* as well. Nevertheless, it does appear to us that the California Supreme Court has cast the die in favor of a relatively absolute rule against further interrogation where the right to remain silent has once been asserted and the defendant has remained in custody, unless the further interrogation is initiated at the request of the suspect.

We are further persuaded that we read our Supreme Court correctly by the recent case of *People* v. *Mack* (1980) 27 Cal.3d 145 [165 Cal. Rptr. 113, 611 P.2d 454].

In *Mack*, the defendant was arrested for receiving stolen property. He was given his *Miranda* warning and declined to make a statement. He was released from custody. Five or six days after he was released from custody, he was arrested on a charge of murder. He was again given a *Miranda* warning and confessed. The confession was admitted at trial; defendant was convicted of murder and appealed.

The Supreme Court, reaffirming its views in *Pettingill*, distinguished it from the case at bench on the *sole* ground that in *Pettingill* the appellant had been "in custody continuously for three days before finally waiving his *Miranda* rights," whereas Mack had been out of custody five or six days before he was rearrested and confessed. (*Id.*, 27 Cal.3d at p. 154, italics added.) It is the fact of *custody* with its inherent coercive ambience inducing a psychological compulsion to confess that underlies, from *Fioritto* on, the court's rule on continued police interrogation of a prisoner who has asserted his right to remain silent, not the knowledge of the police interrogator that the prisoner has invoked his privilege. It is for these reasons that we decline to follow *People* v. *Lopez, supra*, 90 Cal.App.3d 711.

■ At the time appellant's statement was admitted, *Pettingill* had been "on the books" for a year, and *Fioritto, Ireland*, and *Randall* for several years. Appellant's attorney was, he admitted, unaware of *Pettingill*.

Such unawareness disabled the attorney from representing appellant "in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859]; see *People* v. *Coffman* (1969) 2 Cal. App.3d 681, 690 [82 Cal.Rptr. 782] [defense counsel's misreading of precedent and consequent failure to object to inadmissible evidence deprived appellant of a defense].)

## III

Under *Pope*, the question remains whether "counsel's . . . omissions resulted in the withdrawal of a potentially meritorious defense. (23 Cal.3d at p. 425.) Put another way—would appellant have been convicted even if his statement, admitting knowledge of the stolen character of the property, had not been received in evidence?

There was persuasive evidence that appellant was not directly involved in the burglary, and the jury expressed its doubt that he was so involved by acquitting him of that charge. A fingerprint which was not his and a mud print which did not match his clothing were detected at the scene of the crime. Only a very small portion of the money which was stolen, and none of the foreign coins, was found in his possession. No other link was shown between him and the crime.

Appellant's statement did more than show that he knew the money was stolen. His claim that he had had it in his possession for ten days to two weeks must have been regarded by the jury as false. The lie could have been taken by the jury as showing a consciousness of guilt. Without appellant's statement, the only evidence of guilt would have been appellant's possession of recently stolen property. A strict application of CALJIC No. 2.15[3] would not merely have permitted, but might have required, appellant's acquittal. (*People* v. *McFarland* (1962) 58 Cal.2d

---

[3]CALJIC No. 2.15 states: "The mere fact that a person was in conscious possession of recently stolen property is not enough to justify his conviction of the crime charged in [Count — of] the information. It is, however, a circumstance to be considered in connection with other evidence. To warrant a finding of guilty, there must be proof of other conduct or circumstances tending of themselves to establish guilt. [¶] [In this connection you may consider the defendant's false or contradictory statements, if any, and any other statements he may have made with reference to the property. If a person gives a false account of how he acquired possession of stolen property this is a circumstance that may tend to show guilt.]"

748, 754-755 [26 Cal.Rptr. 473, 376 P.2d 449];[4] 1 Witkin, Cal. Crimes (1963) § 462, p. 424.) As it was, the admission of the statement and the giving of the instruction, especially the second paragraph, had the opposite effect.

The omission to make the proper objection certainly resulted in the withdrawal of a potentially meritorious defense; arguably, it deprived appellant of an acquittal.

For the foregoing reasons, the judgment is reversed and remanded for such further proceedings as may be appropriate.

White, P. J., concurred.

SCOTT, J.—I dissent.

I do not read *Fioritto* and *Pettingill* as establishing an absolute ban against further interrogation where the right to remain silent has once been asserted. This case is factually similar to *People* v. *Lopez* (1979) 90 Cal.App.3d 711 [153 Cal.Rptr. 541] (hg. den. May 17, 1979). To reach its conclusion, the majority must disagree with *Lopez*. In my view *Lopez* was correctly decided, and for the correct reasons. The *Fioritto/Pettingill* rule was thoroughly examined and the court concluded "that in *Pettingill* the Supreme Court has attempted to establish reasonable and flexible guidelines in order to accommodate the right of the individual to exercise his privilege against self-incrimination and society's interest in protecting itself through reasonably effective law enforcement procedures." (90 Cal.App.3d at p. 713.)

Justice Gardner points out in *Lopez* that there is a long line of Court of Appeal decisions limiting the broad rule of *Fioritto* to "situations in which on balance the court could conclude that, given the combination of circumstances existing, the defendant had freely, knowingly and intentionally elected to speak without counsel at the second interrogation." (90 Cal.App.3d at p. 718; see *People* v. *Miller* (1974) 40

---

[4]*McFarland* holds that possession of recently stolen property, together with a false explanation of such possession or silence when an explanation should be forthcoming, is sufficient evidence of guilt of theft, burglary or receiving stolen property. But a false explanation, of course, cannot be relied upon when it is elicited by improper questioning (see *Miranda* v. *Arizona, supra,* 384 U.S. 436, 477 [16 L.Ed.2d 694, 725]) and *McFarland* itself recognizes that an accused's "silence cannot be used against him if it is based on a claim of right to which he is legally entitled." (58 Cal.2d at p. 756; see *Doyle* v. *Ohio* (1976) 426 U.S. 610, 618-619 [49 L.Ed.2d 91, 98, 96 S.Ct. 2240].)

Cal.App.3d 228 [114 Cal.Rptr. 779]; *People* v. *Chambers* (1969) 276 Cal.App.2d 89 [80 Cal.Rptr. 672]; *People* v. *Duran* (1969) 269 Cal. App.2d 112 [74 Cal.Rptr. 459]; *People* v. *Brockman* (1969) 2 Cal. App.3d 1002 [83 Cal.Rptr. 70]; *People* v. *Smith* (1969) 270 Cal. App.2d 715 [76 Cal.Rptr. 53]; *People* v. *Lyons* (1971) 18 Cal.App.3d 760 [96 Cal.Rptr. 76].) The Supreme Court in *Pettingill*, and later in *People* v. *Mack* (1980) 27 Cal.3d 145 [165 Cal.Rptr. 113, 611 P.2d 454], did not disapprove of these cases. Indeed, in *Pettingill*, the court explicitly recognized that the *Fioritto* rule allows for contrary conclusions on closely similar fact situations. The court wrote: "Even in applying the comparatively inflexible *Fioritto* rule under present law, the courts have sometimes reached contrary conclusions on admissibility that are difficult to justify in terms of the factual differences between the cases. (Compare, e.g., *People* v. *Miller* (1974) 40 Cal.App.3d 228 [114 Cal.Rptr. 779] (per Thompson, J.), with *People* v. *Parker* (1975) 45 Cal.App.3d 24 [119 Cal.Rptr. 49] (same).) We have no doubt that such discrepancies would be far more frequent under *Mosley*." (21 Cal.3d at p. 251, fn. 12.)

The facts of each case must be examined to determine if there is substantial evidence to support the trial court's finding that there was no violation of the defendant's right against self-incrimination in his statement to a police officer.

The majority asserts that the only meaningful distinction between *Pettingill* and the present case is that here the detective who obtained the incriminatory statement had no knowledge that the appellant had previously invoked his *Miranda* rights. However, it should be noted that in *Pettingill*, two hours after the defendant informed the arresting officer that he wished to exercise his right to remain silent, the same arresting officer renewed interrogation of the defendant regarding the crime for which he was arrested. The defendant again refused to talk. After the defendant had been in custody for three days, a detective, who was aware of the defendant's two refusals, confronted him with evidence of his guilt in a different crime, readvised him of his rights, and obtained a waiver and confession. As Justice Gardner writes in *Lopez,* "Obviously, police harassment existed. The officers were going to interrogate Mr. Pettingill come hell or high water." (90 Cal.App.3d at pp. 717-718.)

In the instant case, the arresting officer advised appellant of his rights and then asked him if he wanted to talk with him about the

drunk driving. When appellant refused, the officer immediately ceased the interrogation. In the morning, the detective, ignorant of the appellant's earlier refusal to discuss the drunk driving charge, readvised appellant of his rights and began asking him questions about the burglary. Unlike *Pettingill*, there were no coercive police tactics here; there was no deliberate attempt to circumvent *Fioritto*. The facts of this case clearly demonstrate that a rigid, inflexible application of the *Fioritto/ Pettingill* rule irrationally obstructs legitimate police investigation activity.

I would affirm.

A petition for a rehearing was denied November 6, 1980. Scott, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied December 4, 1980. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.