[No. D008156. Fourth Dist., Div. One. May 9, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ANGEL PROVENCIO, Defendant and Appellant.

COUNSEL

Christopher D. McIntire, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Rudolf Corona, Jr., and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HUFFMAN, J.—A jury convicted Angel Provencio of two counts of residential burglary. (Pen. Code,[1] § 459.) The court then sentenced him to prison for a total term of seven years, four months.

Provencio appeals, contending the trial court erred in admitting certain hearsay statements tending to identify him as a suspect in the burglaries, in admitting evidence taken in connection with an unlawful arrest, and in failing to give sua sponte certain accomplice instructions regarding testimony of a defense witness who was impeached with a prior statement which incriminated him. He also contends the magistrate at the preliminary hearing denied him due process by restricting cross-examination concerning a

---

[1] All statutory references are to the Penal Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

photographic lineup and that the evidence presented at trial is not sufficient to support one of the convictions. We shall affirm.

## FACTS

After an investigation of a series of neighborhood burglaries, Provencio was arrested and charged with committing two of the crimes. He was originally named in an information together with Patrick Joseph Doldo whose charges were subsequently severed from Provencio's for purposes of trial. At Provencio's trial the following evidence was adduced setting the scene for his apprehension and eventual convictions of the burglary of Mrs. Yvette Poluso's residence on November 20, 1987, and the burglary of Mr. Rickie Alexander's residence on November 25, 1987.

## A

## PROSECUTION

Evidence concerning the Alexander burglary developed first at trial through Poluso's testimony. She testified that on November 25, 1987, she and Mrs. Baldina Burgi, who were neighbors in the area of the 1100 block of Fern Avenue in Imperial Beach, had just returned home after picking up their children from kindergarten. They were sitting in Burgi's car talking when she noticed two men walking by the car. Since there had been numerous recent burglaries in the neighborhood, both she and Burgi were careful to notice the two men. She described one of the men as being white and one as being a dark-haired Mexican male. She identified Provencio as the dark-haired Mexican male she and Burgi observed. She stated he was wearing a red baseball cap and light blue zip-up jacket when she saw him that day in November.

Poluso related she and Burgi continued to watch the men as they walked up an alley in the residential neighborhood. Neither man had anything in his hands at that time. Poluso and Burgi saw the men quickly disappear behind a fence. Still in the car, Burgi, with Poluso, drove part way up the alley to the point where the men had disappeared. They then noticed a nearby house, later identified as Alexander's residence, had its screen door "mangled" and one of the curtains open.

After waiting a brief period, they turned the car around and drove back down the alley. The curtains in Alexander's house were closed when they drove back by the house. They then saw Mr. Kenneth Robertson, another resident of the area whose house had been burgled the day before, and tried to attract his attention. At that moment they saw the same two men they

had noticed earlier on the sidewalk near 11th Street. The men now had bags, which Poluso described, in their hands. She said that by this time Robertson was nearby and she and Burgi began shouting that the two men were the burglars or the "robbers." Simultaneously, the two men "took off running" with the bags.

The chase was on. Poluso then described Robertson in pursuit of the men, with Burgi and her following in Burgi's car. The chase covered several blocks of the neighborhood with the two suspects separating and running in different directions. The person Poluso described as the white male or the brown-haired man was pursued through a construction site and property belonging to Provencio's family. Finally, that man was caught by some of the construction workers who had been working nearby and had taken off running after the suspect in response to Poluso's and Burgi's cries that he was one of the burglars. The person apprehended by the construction workers was later identified as Patrick Joseph Doldo.

Doldo was eventually arrested by sheriff's deputies who were called to the construction site. In a search subsequent to his arrest, the deputies found a substantial quantity of stolen property on him. Sometime later, the bags described by Poluso were located by citizens in the neighborhood and turned over to the police. The bags contained some of the stolen property taken from the Alexander residence.

Further testifying, Poluso stated that at the time of Doldo's arrest, there was some discussion between neighbors, construction workers, and sheriff's deputies concerning the chase and capture. During those discussions, she spotted the other person she had seen earlier with Doldo and identified as Provencio standing on the opposite corner of Fern and 12th. She yelled to the others, "There's the other man," and when she attracted everyone's attention, the chase began anew. However, Provencio in his red baseball cap and blue jacket again escaped.

Poluso also testified she had seen Provencio on an earlier occasion. She described an event on September 14, 1987, when this same man she saw on November 25, 1987, came to her house and pounded loudly on the door, announcing, "It's Frank, it's Frank." She then noticed that the man had gone around to her kitchen and was trying to open her sliding glass doors. Being frightened, she fled the house with her small child. She contacted the sheriff's office about the incident and later returned home to find her house had been burgled.

She believed she next saw the same man on November 20, 1987, when her home was again burgled. At that time, she observed Provencio and another

man near a garbage dumpster outside her house as she was returning home. She observed Provencio standing in the dumpster and "passing stuff out" to the second man. She was fairly sure that the same dark-haired man standing in the dumpster was the same man who had pounded on her door earlier in September and was the same man she and Burgi saw and chased on November 25, 1987. She watched the men until they "took off down the alley" and disappeared.

When she finally went into her house she discovered the place in a mess and numerous items missing. Among the items taken from her house was a shotgun, VCR, camera, wristwatch, and a military knife described as a K-BAR knife. The brown case of the 12-gauge shotgun appeared to be similar to one of the objects she saw Provencio handing out of the dumpster to the second man.

Burgi then testified consistently with Puloso's testimony. She also identified Provencio as the Mexican man she and Poluso had seen and chased on November 25, 1987.

Robertson also testified as to the events of the chase that day. He identified Provencio as the person being chased and stated there was "no way" he could be mistaken about such identification.

Sheriff's Deputy Penny Humphrey then testified that at 9:22 a.m. on November 26 (Thanksgiving Day), 1987, she was directed to the Winchell's Donut Shop at the corner of 13th and Imperial Beach Boulevard to assist another deputy. There Sergeant Krtek of her office was chasing a male Mexican who had jumped from the roof of the building and was possibly involved in a burglary. They were unable, however, to catch the suspect.

A bystander, Dr. Earl Foate, told the deputies he had observed the suspect jump onto a dumpster in the alley behind the shopping center where the Winchell's Donut Shop was located. The suspect then climbed to the top of the shopping center. Foate described the suspect as a male Hispanic in his early 20's and bare from his waist up.

Deputy Humphrey further testified she checked the dumpster behind the building and discovered clothing which was still warm, notwithstanding the cool, early morning hours. She also found a blue jacket, thermal shirt, and a military knife with the designation of U.S.N. Mark 2 wrapped inside the articles of clothing. She seized all the items as evidence for this case.

Finally, on December 3, 1987, Provencio was arrested in the driveway of his family residence. Deputies discovered him there lying on the back seat

floorboard of a car, covered with a blanket. A search incident to his arrest rendered two women's watches, a gold chain with cross, a butterfly knife with a flip-open locking blade, and a plastic pouch with two syringes found in his pockets.

After being properly advised of his constitutional rights, Provencio talked with Sheriff's Deputy Raymond Anderson. He denied any burglaries or thefts, but admitted to having been on top of the Winchell's store and jumping off the roof when the sheriff's deputies arrived. He said he ran approximately two blocks until he was hit by a car.

## B

### DEFENSE

For the defense, Doldo testified he had earlier pleaded guilty pursuant to a plea bargain to two counts of burglary. In addition, he admitted committing the Robertson and Alexander burglaries on November 24 and 25, 1987, respectively, and the burglary of the Poluso residence on November 20, 1987. While he acknowledged knowing Provencio for five to six years, he denied that Provencio participated in any fashion in these burglaries. Doldo stated Clemmon Estrada was his partner in the burglaries and that he did not even see Provencio on either November 24 or 25, 1987. When questioned further, he denied making a statement to Detective Anderson Provencio was the person who committed the burglaries with him. He said he only told Anderson about his own involvement in the burglaries.

Provencio then testified on his own behalf and denied committing any of the burglaries with Doldo. He offered explanations for his whereabouts at the time of each of the burglaries. He specifically denied banging on Poluso's door and saying he was Frank or attempting to open her sliding glass door. He also denied telling Detective Anderson he had jumped from the roof of a commercial building near the Winchell's Donut Shop on November 26, 1987. In justifying his presence at his place of arrest, Provencio explained he was not hiding in the car at the time of his arrest but was merely sleeping under the blanket.

## C

### REBUTTAL

Detective Anderson was called as a rebuttal witness and testified as to statements made to him by Provencio and Doldo in their interviews after their respective arrests. He testified Provencio admitted he was the person

who jumped off the Winchell's Donut complex's roof on November 26, 1987. Provencio had told him that he had a limp because he was hit by a car after jumping and running from the Winchell's location. Anderson noted he had observed Provencio walking with a limp at the time of his arrest.

Anderson further testified regarding his interview with Doldo after his arrest on November 25, 1987. Doldo advised him during an unrecorded portion of their tape-recorded conversation that the burglaries had all been committed with Provencio and that he had served as a lookout for Provencio in all of them except the Robertson burglary. Anderson also testified that Doldo described other places burglarized and provided information on the disposition of the property taken in the burglaries. According to Anderson, Doldo stated Provencio was the person who ordinarily disposed of the stolen property on their behalf.

After hearing closing arguments and jury instructions, and duly deliberating, the jury returned verdicts finding Provencio guilty of both the Poluso and Alexander burglaries.

## DISCUSSION

### I

### Spontaneous Statements

 During the trial, burglary victim Robertson testified to events which took place shortly after Doldo was arrested and taken away by sheriff's deputies. At that time, he was standing with some coworkers on the corner of 12th and Fern in a crowd of neighbors gathered there excitedly discussing the events which had just taken place. As part of his testimony, Robertson said he heard "some kids come running by and [yell], " 'Hey, there goes Angel.' " He stated the crowd immediately took off running down the street after the suspect, but then lost sight of him.

Defense counsel immediately objected to this testimony as inadmissible hearsay and moved to have it stricken. The trial court sustained the objection and stated the "last portion about what the kid said will be stricken at this point." The prosecutor then asked to be allowed to lay a foundation for having the statement come into evidence as an excited utterance or a spontaneous statement.

Outside the presence of the jury, Robertson again took the stand and was questioned on the events surrounding the making of the statement. He did not know which child made the statement but stated: "[The children] were

across the street. One of them was on a bicycle, I think. And another one was bouncing a ball, I believe. Everybody in the neighborhood knew that one person had been caught. The helicopters were flying around and . . . [e]verybody wanted to catch the other burglar because everybody in our neighborhood was getting burglarized."

Robertson went on to describe the crowd's mood as excited; they were discussing how to catch the remaining burglary suspect. It was at this point that one of the children screamed out, "There goes Angel." Robertson then stated the crowd turned toward where the yelling came from and they could see the back of a guy running. He said it looked like the same guy he chased after earlier.

After further arguments on the point by counsel, the trial court stated: "Sounds to me like a couple of kids, one on a bicycle and one playing ball, and everybody had been looking for this other person. The statement, the way he described it was the kids were excited and yelling, and they screamed out, 'There goes Angel,' and there's the guy jumping into another yard. [¶] I think he fits the exception. I am going to allow it in."

Thereafter, in the presence of the jury, Robertson was allowed to elaborate on the circumstances surrounding the making of the excited statement. On this point, the following colloquy occurred: Question: "Did you hear these kids say anything while you were standing outside with your friends?"

Answer: "No. We were standing there talking and a voice yelled out, 'Hey, there's Angel' and they pointed out down the block."

Question: "Could you describe the voice?"

Answer: "He was screaming towards us, yelling at us, excited, 'There goes Angel.'"

Question: "Did you see, did you look around at that time?"

Answer: "Yeah, we all looked down the street."

Question: "Down what street?"

Answer: "It was 12th Street about three-fourths of a block from my house. And I seen someone running."

Question: "And what, can you describe the person?"

Answer: "The same dark pants I had seen earlier, dark coat, and a baseball cap running away from me and jumped a fence."

Question: "What color baseball cap?"

Answer: "Red."

Question: "This individual appeared to be similar to the same person that you chased earlier?"

Answer: "I would say it was the same person."

Provencio contends the trial court erred in permitting the statement "[t]here goes Angel" to be received in evidence because it does not qualify as a reliable, spontaneous statement. Relying on *People v. Rios* (1985) 163 Cal.App.3d 852, 863 [210 Cal.Rptr. 271], he specifically argues the circumstances surrounding the making of the statement were such that its trustworthiness could not be determined; therefore, without such guarantee of reliability, the admission of the statement violated his right of confrontation. (*Id.* at p. 863; *Dutton v. Evans* (1970) 400 U.S. 74 [27 L.Ed.2d 213, 91 S.Ct. 210].) He further relies on *Ungefug v. D'Ambrosia* (1967) 250 Cal.App.2d 61 [58 Cal.Rptr. 223] for support that the statement was inadmissible because the identity of the child (the hearsay declarant) was unknown and thus untrustworthy. His arguments are not well taken.

While Provencio is correct the trial court has a responsibility to examine the circumstances of proffered hearsay to determine if they fall within an exception to the hearsay rule and promote reliability, he fails to recognize the trial court did so in this case and properly used its discretion in determining the statement was admissible.

■ The modern development of the doctrine of spontaneous statements is well stated by Witkin: "The theory is that the declarant has had no opportunity to fabricate a false story, and the test laid down by Wigmore has been approved in California [by the Supreme Court in *Showalter v. Western Pacific R. R. Co.* (1940) 16 Cal.2d 460, 468 (106 P.2d 895)]: '(1) [T]here must be *some occurrence startling enough* to produce this *nervous excitement* and render the utterance *spontaneous* and unreflecting; (2) the utterance must be *before* there has been *time to contrive* and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must *relate to the circumstance of the occurrence* preceding it.' [Citations.]" (1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 714, pp. 697-698; see also,

*People* v. *Farmer* (1989) 47 Cal.3d 888, 901-904 [254 Cal.Rptr. 508, 765 P.2d 940].)

This modern rule is codified in Evidence Code section 1240, which provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

■ The decision to admit or reject hearsay evidence offered pursuant to this exception to the hearsay rule is vested in the sound discretion of the trial court and its ruling will not be disturbed on appeal unless those facts upon which it relied are not supported by a preponderance of evidence. (*People* v. *Tewksbury* (1976) 15 Cal.3d 953, 966, fn. 13 [127 Cal.Rptr. 135, 544 P.2d 1335]; *Showalter* v. *Western Pacific R. R. Co., supra,* 16 Cal.2d at pp. 468-469; *People* v. *Jones* (1984) 155 Cal.App.3d 653, 660 [202 Cal.Rptr. 289].)

■ Here, the event appears to be the archetypical spontaneous declaration triggered by an exciting event. As the excerpts from the reporter's transcript show, the mood of the crowd was anxious and expectant at the time a man ran by and a child cried out, "There goes Angel." The circumstances of the observation of the running figure and Robertson's description of that person, noting he was wearing the same clothing as the person he had observed and chased earlier, the same person he had identified as Provencio, are sufficient facts to meet the required test of reliability. The trial court's finding the statements were made during an exciting event is thus well supported by a preponderance of the evidence in the record.

Moreover, Provencio's reliance on *Ungefug* v. *D'Ambrosia, supra,* 250 Cal.App.2d 61 is misplaced. *Ungefug* dealt with a situation where an unidentified person in a crowd nearby a traffic accident made certain statements concerning the incident. The court there found the statements inadmissible as untrustworthy because the facts did not show or suggest the declarant had actually witnessed the accident. The court applied the spontaneous statement rule as set out in *Showalter,* and noted that the declarations relating to an event must be "perceived by the declarant" under the "stress of excitement caused by such perception." (*Ungefug* v. *D'Ambrosia, supra,* 250 Cal.App.2d at pp. 67-78.) The court stated: "It must, therefore, appear 'in some way, at least, and with some degree of persuasive force' that the declarant was a witness to the event to which his utterance relates. [Citations omitted.] Although this does not require direct proof that the declarant actually witnessed the event and a persuasive inference that he did is

sufficient, the fact that the declarant was a percipient witness should not be purely a matter of speculation or conjecture. [Citations.]" (*Id.* at p. 68.)

Contrary to the weak showing in *Ungefug,* the facts here reveal with "some degree of persuasive force" that the declarant had witnessed the event of which he or she uttered. When the child cried out, "There goes Angel," Robertson immediately turned, identified a fleeing figure dressed in the same clothing as the person identified by him as Angel Provencio who he had seen and chased earlier in the day. From these facts the only reasonable inference is that the hearsay declarant (the unidentified child) actually perceived the exciting event at the time announced. The trial court was correct in overruling Provencio's hearsay and reliability objections.

## II

### The Alleged Unlawful Arrest

■ Provencio next seeks to raise the issue of the lawfulness of his arrest for the first time on appeal. In this regard, he contends the court erred in admitting evidence taken in connection with his arrest. He argues sheriff's deputies acted without probable cause at the time they arrested him; therefore, the physical items seized and his statements made at that time were the inadmissible fruit of an illegal arrest and should not have been used at trial.

Provencio acknowledges no motion to suppress was made in the trial court. He attempts, however, to excuse this omission by application of the universal solvent, the claim of ineffective assistance of counsel. (See *People v. Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People v. Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

Our Supreme Court dealt with and rejected a similar set of contentions in *People v. Jenkins* (1975) 13 Cal.3d 749, 753-755 [119 Cal.Rptr. 705, 532 P.2d 857]. There, it held a defendant who does not raise Fourth Amendment issues by a proper motion in the trial court to suppress evidence under section 1538.5 cannot raise that issue for the first time on appeal. (*Ibid.*) It further held that where a defendant seeks to avoid such limitation by urging on appeal trial counsel's ineffectiveness for failing to bring a motion to suppress, the defendant bears the burden of establishing that ineffectiveness. (*Ibid.*)

Relying on earlier case law, the Supreme Court stated: " 'The proof of this inadequacy or ineffectiveness must be a demonstrable reality and not a speculative matter.' " (13 Cal.3d at p. 753.) In other words, the record must

demonstrate that counsel was ignorant of the facts or of the law and that such ignorance resulted in a withdrawal of a crucial defense.

The record in this case does not permit such an inference of ineffectiveness of counsel. Nothing in the record demonstrates trial counsel was unaware of the grounds for a motion to dismiss under section 1538.5. Nor is there anything in the record from which we can determine trial counsel's decision not to bring such a motion was anything other than a tactical one.

In fact, there is evidence in the record that a search warrant was simultaneously executed at the Provencio family residence during the time of Provencio's arrest in a car parked in the driveway of the family home where he was found hiding under a blanket. Thus the record is equally susceptible of an inference counsel, aware of the existence of the search warrant, the circumstances of Provencio's arrest and the information possessed by sheriff's deputies, made a tactical judgment not to challenge the arrest by way of a motion to suppress under section 1538.5.

Provencio's reliance on *People* v. *Rosales* (1984) 153 Cal.App.3d 353 [200 Cal.Rptr. 310] and *People* v. *Borba* (1980) 110 Cal.App.3d 989 [168 Cal.Rptr. 305] to bolster his contention of ineffective assistance of counsel is misplaced. Each case is factually distinguishable from Provencio's situation.

While the issue complained of on appeal in *Borba,* that Borba's confession was illegally obtained, was found not to have been properly raised in the lower court as it was raised for the first time in a motion for new trial, the record there as compared to the one here supported a claim of ineffective assistance of counsel. (*People* v. *Borba, supra,* 110 Cal. App.3d at pp. 994-998.) That record affirmatively demonstrated Borba's counsel did not know the law regarding confessions. The court thus found Borba had satisfied his burden of showing his counsel's ignorance of the law and facts in the case. It determined such ignorance resulted in the withdrawal of a potentially meritorious defense and reversed his convictions. (*Id.* at pp. 997-998.)

Likewise, the record in *Rosales* demonstrated ineffective assistance of counsel. On its face it showed Rosales's counsel was unaware of the case law which would have supported a suppression motion. (*People* v. *Rosales, supra,* 153 Cal.App.3d at p. 361.) In addition, the Attorney General there conceded trial counsel failed to act as a reasonably competent attorney and simply argued the issue of the impact of that failure. The court, as in *Borba,* found that counsel's unawareness deprived the defendant in *Rosales* a potentially meritorious defense and reversed. (*Id.* at pp. 362-366.)

As noted above, the record here fails to show Provencio's counsel lacked awareness of the facts or law in this case and the Attorney General does not concede any such failure. Additionally, Provencio has failed to demonstrate the withdrawal of a crucial defense. Thus his argument he is entitled to raise the unlawfulness of his arrest and the incompetence of counsel at this time on the basis of this record is without merit.

III

Restriction of Cross-examination at the Preliminary Examination

■ Provencio also complains for the first time on appeal he was denied due process because the magistrate erred in restricting cross-examination at the preliminary hearing concerning a photographic lineup presented to certain witnesses.

Generally, claims of error at the preliminary hearing are challenged in the superior court by way of a motion to set aside the information under section 995. Provencio, however, did not bring such a motion in the trial court on grounds of any alleged error by the magistrate, including the question he now raises about the alleged restriction of cross-examination. The issue not having been presented to the trial court, that court never had the opportunity to pass on the question and make a record of such for our review.

It is well settled in California that "failure to move to set aside the information (Pen. Code, § 995) bars the defense from questioning on appeal any irregularity in the preliminary examination (Pen. Code, § 996)." (*People* v. *Harris* (1967) 67 Cal.2d 866, 870 [64 Cal.Rptr. 313, 434 P.2d 609]; *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941].) Therefore, we do not consider on this appeal Provencio's claims of due process violations because of the alleged restriction of cross-examination by the magistrate at the preliminary hearing.

IV

Sufficiency of Evidence

■ Provencio next contends there is insufficient evidence to support the conviction of the "Poluso robbery" [*sic*], specifically claiming there is no competent evidence to link him to that crime. He argues Poluso's testimony is inherently unbelievable and inconsistent concerning her identification of him as the second person at the dumpster near her house on November 20, 1987, and that the only competent evidence possibly connecting him to the

Poluso crime is the military knife recovered in the dumpster near Winchell's Donut Shop on November 26, 1987. That knife, he asserts, only looked "familiar" to a knife taken from Poluso's residence on the 20th of November. Moreover, he claims the alleged statements he made to Detective Anderson which place him in the area of the Winchell's are insufficient to support the jury finding he committed the Poluso burglary. We disagree the evidence was insufficient to support his conviction.

When, as here, a challenge to the sufficiency of the evidence is made on appeal, we review the entire record to see "whether the evidence is such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People* v. *Bloyd* (1987) 43 Cal.3d 333, 346 [233 Cal.Rptr. 368, 729 P.2d 802].) In doing so, we view the facts in the light most favorable to the judgment, drawing all inferences in support of the judgment. (*People* v. *Silva* (1988) 45 Cal.3d 604 [247 Cal.Rptr. 573, 754 P.2d 1070].) Our power as an appellate court "begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, [we are] without power to substitute [our] deductions for those of the [trier of fact.] If such substantial evidence be found, it is of no consequence that the [jury] believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion. [Citations.]" (*Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925], italics omitted.)

In reviewing the record, we do not reweigh the facts. We look for evidence " 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value.' " (*People* v. *Murtishaw* (1981) 29 Cal.3d 733, 771, fn. 34 [175 Cal.Rptr. 738, 631 P.2d 446], overruled on other grounds in *People* v. *Boyd* (1985) 38 Cal.3d 762 [215 Cal.Rptr. 1, 700 P2d 782]; *People* v. *Williams* (1988) 198 Cal.App.3d 873, 890 [243 Cal.Rptr. 914].) The testimony of one witness, unless it is physically impossible or inherently improbable, is sufficient to support a conviction. (*People* v. *Scott* (1978) 21 Cal.3d 284, 296 [145 Cal.Rptr. 876, 578 P.2d 123].) The credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. (Evid. Code, § 312.) The test on appeal is not whether we believe the evidence at trial established the defendant's guilt beyond a reasonable doubt, but whether " ' "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People* v. *Rich* (1988) 45 Cal.3d 1036, 1082 [248 Cal.Rptr. 510, 755 P.2d 960], original italics.)

Applying these rules, we examine the record. At trial, Poluso testified about her observations concerning the rash of burglaries in her neigh-

borhood and specifically as to two at her house. She identified Provencio as the same dark haired man she saw knocking on her door September 14, 1987, just before her house was burgled that day; as the same man she saw with another man near a dumpster by her house on November 20, 1987, just before she discovered her house had been burgled a second time; and as the same man she and Burgi observed and chased on November 25, 1987, when Alexander's residence was burgled. Even though her identification of Provencio may have varied between the preliminary hearing and the trial, such was a matter of credibility for the jury to resolve.

As for the November 20, 1987, burglary of her residence, Poluso testified a shotgun and its brown case had been taken from her house. She stated when she saw Provencio at the dumpster that day she also saw him transferring from the dumpster to the other man a brown object which looked like the shotgun case. She additionally testified that a military type knife was taken from her home that day and identified a knife at trial recovered from a dumpster near a Winchell's Donut Shop as "familiar as to one that my husband had."

In addition, numerous people identified Provencio as the person with Doldo at the time of the Alexander burglary. Burgi, Robertson and Poluso all identified him as the person with Doldo on November 25, 1987, who they chased. This evidence, considered together with Doldo's statements to Detective Anderson before the trial, support the jury finding Provencio committed the Poluso burglary with Doldo.

Although Doldo testified at trial someone else accompanied him on the burglaries, he was impeached with his earlier statements to Anderson that Provencio was his accomplice at the Poluso burglary on November 20, 1987, and they took a shotgun from the residence at that time. Doldo also told Anderson Provencio was the person who actually entered the Poluso house to commit the burglary. While it is true that accomplice testimony is often suspect and must be corroborated to support a judgment (§ 1111), Poluso's testimony along with the demonstrative evidence found in the Winchell's dumpster and the identification of Provencio by others as Doldo's confederate for the November 25, 1987, burglary sufficiently corroborates Doldo's prior inconsistent statements.

Moreover, Provencio's admission to Detective Anderson that he was on top of the Winchell Donut complex on November 26, 1987, and the facts Provencio was seen around that same time in the vicinity of Winchell's without a shirt on and Deputy Humphrey found some warm upper body clothing in the dumpster with the military knife, further support the conclusion Provencio was at the Poluso residence on the 20th of November. The

jury could easily have connected Provencio with the evidence seized from the dumpster by reason of his appearance on the roof and the clothing discarded along with the knife.

When the record as a whole is reviewed here, with the numerous neighborhood burglaries, the sufficient evidence establishing Provencio's guilt for the Alexander burglary and the circumstantial evidence surrounding the Poluso burglary, we conclude the jury could reasonably infer that Provencio was one of the two burglars who committed the series of burglaries with Doldo, including that of the Poluso residence on November 20, 1987. Thus based upon all the evidence presented at trial, there is clearly sufficient evidence to support the verdict on appeal.

## V

### Accomplice Testimony and Corroboration

■ Finally, in a supplemental brief, Provencio contends the trial court was required to instruct the jury sua sponte that Doldo's prior inconsistent statement required corroboration. He bases this contention on the fact that Doldo's earlier out-of-court statements to Detective Anderson, if believed, would make him Provencio's accomplice as a matter of law. (§ 1111; *People v. Gordon* (1973) 10 Cal.3d 460, 469 [110 Cal.Rptr. 906, 516 P.2d 298].) Under the peculiar circumstances of this case, we find no error.

■ As our Supreme Court has stated: "The law on this question is clear. When an accomplice is called as a witness by the prosecution, the court must instruct the jurors sua sponte to distrust [an accomplice's] testimony. [Citations.] When, by contrast, he is called by the defendant, the instruction should be given only at the defendant's request. [Citations.] Finally, when he is called by both parties, the instruction should be tailored to relate only to his testimony on behalf of the prosecution. [Citations.]" (*People v. Williams* (1988) 45 Cal.3d 1268, 1314 [248 Cal.Rptr. 834, 756 P.2d 221].)

Moreover, our Supreme Court has also recently held that there is no duty on the trial court to give instructions on accomplice testimony when the defense calls the witness to testify on its behalf and that witness gives self-interested testimony unfavorable to the defense. (*People v. Garrison* (1989) 47 Cal.3d 746, 775 [254 Cal.Rptr. 257, 765 P.2d 419].) Because the defendant is powerless to offer an inducement of leniency to the witness, the same rationale for requiring accomplice instructions for close scrutiny of such testimony when the prosecution calls the witness does not apply when the defense calls the witness. (*Ibid.*)

Under these principles, and the facts in this case, absent a defense request for a finely tailored jury instruction limited to Doldo possibly being regarded as an accomplice concerning his earlier statements to Detective Anderson, the trial court did not err in failing to instruct sua sponte that Doldo's prior inconsistent statements required corroboration. To hold otherwise would be to place the trial court in a Catch-22 situation where it would be constantly stepping on a treadmill of error—damned if it gives such an instruction and damned if it doesn't. (See *People* v. *Graham* (1978) 83 Cal.App.3d 736, 744, fn. 6 [149 Cal.Rptr. 6]; *People* v. *Flanders* (1979) 89 Cal.App.3d 634, 638 [152 Cal.Rptr. 696].)

In this case, the facts show Doldo was called as a defense witness at trial. His in-court testimony was favorable to Provencio, clearly showing he allied himself with the defense. He testified Provencio never participated in a burglary with him and denied stating otherwise to Detective Anderson.

Thereafter, the People called Anderson to testify to earlier out-of-court statements allegedly made by Doldo in an interview with him and which tended to incriminate Provencio. These statements were brought into evidence on rebuttal for purposes of impeachment and to prove the matters stated within those statements, that Provencio was with Doldo during the burglaries. (Evid. Code, § 1235.)

As noted above, the mere presence of potentially incriminating out-of-court statements of a defense witness who denies accomplice status, does not give rise to a sua sponte duty to instruct the jury concerning accomplice testimony when the witness is called to testify for the defense. Rather a question of credibility for the jury to determine arises concerning the weight to be given to such statements.

Even where a sua sponte duty to instruct exists, it is inappropriate to so instruct where such instructions would potentially prejudice a defendant. (*People* v. *Rosenkrantz* (1988) 198 Cal.App.3d 1187, 1201 [244 Cal.Rptr. 403].) For example, where a defendant relies on a defense of alibi or nonparticipation, accomplice instructions regarding defense witnesses may have the potential of being highly prejudicial to a defendant's case. (See *People* v. *Flanders, supra,* 89 Cal.App.3d 634, 638-640.)

Because Provencio denied participation in the burglaries, and Doldo testified in his behalf consistent with that defense, the use of the general accomplice instructions here could have easily raised a reasonable inference in the minds of the jury that all of Doldo's testimony was suspect. Such would have been detrimental to Provencio and thereby caused grave prejudice to his defense. Any instruction concerning accomplice testimony in this case would have had to have been carefully tailored to mesh with the defense, a task inappropriate for sua sponte instructions. Thus, based on

this record, we conclude there was no sua sponte duty on the part of the trial court to give accomplice instructions.[2]

Cases on which Provencio relies to support his contention otherwise are distinguishable. Contrary to his contention *People v. Belton* (1979) 23 Cal.3d 516 [153 Cal.Rptr. 195, 591 P.2d 485] requires sua sponte accomplice instructions whenever prior inconsistent statements are received into evidence and those statements inculpate a defendant as well as the accomplice, that case did not discuss jury instructions. Rather *Belton* was concerned with whether prior inconsistent statements used to impeach a witness were sufficient evidence to support a conviction based solely on the testimony of that alleged accomplice witness who was called by the prosecution in its case-in-chief, or whether a motion for acquittal in that court trial should be granted. (*Ibid.*) The court there determined acquittal should have been granted as there was no corroborating evidence in the record to support the prior inconsistent statements of an accomplice.

Here, however, as already discussed in section IV, there is more than ample corroborating evidence to support Provencio's convictions. Even Poluso's testimony alone would corroborate Doldo's statements and support Provencio's conviction on the burglary of her residence; such testimony sufficently tended to connect Provencio with the commission of that offense.

Provencio's reliance on *People v. Miller* (1960) 185 Cal.App.2d 59 [8 Cal.Rptr. 91] and *People v. Flanders, supra,* 89 Cal.App.3d 634 are similarly inapposite. In *Miller,* the purported accomplice was called as a witness by both the prosecution and the defense. (*People v. Miller, supra,* 185 Cal.App.2d at p. 83.) The court in *Miller* focused on the fact the prosecution relied on the accomplice as its own witness and limited the sua sponte duty to instruction on accomplice testimony to those instances where the accomplice is called by the People. (*Id.* at p. 82.) Here, Doldo was called as a witness only by the defense.

While in *Flanders,* a situation similar to this case arose, the court there gave a modified accomplice instruction carefully limited to cover only that part of the accomplice's testimony which incriminated Flanders. (*People v. Flanders, supra,* 89 Cal.App.3d at pp. 637-639.) Flanders claimed error. The appellate court held the trial court did not err in giving the instruction without an objection by Flanders or a request by him for contrary or

---

[2] We are aware there are cases, including those from this court (*People v. James* (1987) 196 Cal.App.3d 272 [241 Cal.Rptr. 691]), which state: "When the evidence establishes by a preponderance of the evidence that a person is an accomplice, then the court must instruct sua sponte on accomplices." (*Id.* at p. 284.) These cases, however, must only be considered as authority for the express propositions presented. Accordingly, *James,* not having considered the proposition presented in this case, is inapposite. We do not speculate as to whether there is a case which requires a tailored instruction sua sponte.

additional instructions. *Flanders,* however, did not discuss whether accomplice instructions regarding the prior inconsistent statements used there for impeachment purposes were required sua sponte.

 Even assuming the trial court had a duty to instruct the jury regarding corroboration of Doldo's alleged accomplice testimony, the failure to so instruct the jury is not reversible error unless it resulted in a miscarriage of justice. (*People* v. *James, supra,* 196 Cal.App.3d at p. 285; *People* v. *Heishman* (1988) 45 Cal.3d 147, 164 [246 Cal.Rptr. 673, 753 P.2d 629].)

 Although Doldo's prior inconsistent statements tended to support the fact that it was Provencio who was with Doldo during the neighborhood burglaries, independent identification evidence provided by Poluso, Burgi, and Robertson, along with physical evidence found with some clothing identified as belonging to Provencio and other circumstantial evidence, sufficiently corroborates Doldo's out-of-court statements and supports Provencio's convictions. Because it is not reasonably probable that an outcome more favorable to Provencio would have resulted had the court carefully tailored some form of accomplice instructions concerning Doldo's prior inconsistent statements, any instructional error in that regard is harmless. (*People* v. *Miranda* (1987) 44 Cal.3d 57, 100 [241 Cal.Rptr. 594, 744 P.2d 1127].)

The judgment is affirmed.

Wiener, Acting P. J., and Benke, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 16, 1989.