Filed 9/12/16  P. v. Loureiro CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ALEXANDER OSCAR LOUREIRO,<br><br>     Defendant and Appellant. | B262220<br><br>(Los Angeles County<br>Super. Ct. No. SA085686) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Leslie E. Brown, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Does the spontaneous statement exception to the hearsay rule apply when the identity of the declarant is not known? We conclude that where, as here, the declarant perceived the event to which the statement applies and made the statement while still under the stress of excitement caused by the perception, the exception applies, even if the declarant's identity is unknown. Because the trial court did not abuse its discretion in admitting the hearsay statement in this case under the spontaneous statement exception, and because any error in admitting the statement was harmless, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Crime*

In November 2013 Donald Denney was 58 years old. He lived on the streets in Santa Monica, California.

On November 5, 2013 Denney went to sleep between 6:00 p.m. and 7:00 p.m. in an alleyway near 12th Street and Colorado Avenue. He removed his shoes, and placed his valuables, including his glasses and one or both of his cell phones, inside his shoes. He also had $200 hidden in the pocket of a pair of shorts that he wore underneath his pants.

Denney woke up when someone, whom he later identified as Alexander Loureiro, kicked him in the back. Loureiro was 27 years old at the time. Loureiro "said he was high and wanted some money to get higher." Denney told Loureiro that he was homeless and did not have any money. Loureiro kicked Denney again, even harder. Denney stood up, and when Loureiro reached for Denney's pockets, Denney pushed Loureiro away. Loureiro became angry, and said to Denney, "Don't you ever put your fucking hands on me again."

Loureiro then attacked Denney by pressing his thumbs into Denney's eyes. Denney defended himself, and responded by sticking his thumbs in Loureiro's eyes.

2

Denney grabbed Loureiro by the hair and fell backwards, causing Loureiro to hit his head against the side of a building. Denney rolled away and reached for one of his cell phones to call the police. At this point Denney saw another man in the alley who had blond hair, whom witnesses identified at trial as a man named Robert, also known as Slayer. Denney pressed 911, but may not have hit the send button. Loureiro knocked the cell phone out of Denney's hand. Police later found pieces of the broken phone at the scene of the altercation, consistent with Denney's version of the incident.

At 6:55 p.m. Detective Adam Barry received a telephone call from dispatch regarding a possible stabbing or robbery at 12th Street and Colorado Avenue. Detective Barry was only five blocks from Denney's location, and he drove up with his car's sirens and lights on. Detective Barry obtained from Denney a description of his assailants.

Karl Soderbergh lived near 12th Street and Colorado Avenue, and his apartment had a balcony directly above the alley between 12th Street and Colorado Avenue, 30 feet from where the fight between Denney and Loureiro occurred. Soderbergh heard a "scuffle" outside, which lasted about 10 seconds. When he heard more noises, he went out onto his balcony and looked south towards Colorado Avenue. At first he did not see anyone. Then he observed two people running north up the alley from the direction where Denney had been stabbed. Soderbergh later identified these individuals as Loureiro and Slayer. Moments later Loureiro's girlfriend joined Loureiro and Slayer in the alley. Soderbergh heard a male voice say, "All that for 10 fucking dollars?" Soderbergh testified he did not know who made the statement, but he believed it was one of the two men. Slayer, Loureiro, and Loureiro's girlfriend continued to run up the alley until they were out of sight.

Less than a minute later, Soderbergh heard the sirens of emergency vehicles approaching. He went downstairs to the alley, and walked around the corner onto Colorado Avenue, where he saw Denney on the ground. Soderbergh gave the police a description of Slayer, Loureiro, and Loureiro's girlfriend.

Officer Walter Ramirez began looking for suspects based on the descriptions Denney and Soderbergh had given the police. While driving in his patrol car, he

3

observed Loureiro walking at a fast pace, sweating heavily, and repeatedly looking over his shoulder. Officer Ramirez made eye contact with Loureiro, but Loureiro never indicated he wanted to speak with the officer, nor did Loureiro make any effort to attract the officer's attention. Because Loureiro matched the descriptions by Denney and Soderbergh, Officer Ramirez detained Loureiro. Officer Ramirez retrieved from Loureiro's pocket a folding knife with a black plastic handle that appeared to have fresh blood on the blade.

Denney woke up three days later in the hospital. He had multiple stab wounds to his abdomen, forearm, side, back, and hand. When asked about his current level of pain, he replied, "I'm not the man I used to be."

Loureiro, who testified at trial, presented an entirely different version of the incident with Denney. Loureiro stated he was walking down the alley at 12th Street and Colorado Avenue with his girlfriend and Slayer. As Loureiro walked past Denney, who was standing and possibly barefoot, Denney asked for $10. When Loureiro said he did not have $10, Denney became enraged and started screaming. Denney grabbed Loureiro's shirt and threw Loureiro against the wall of a building, where he hit his head. Denney then got on top of Loureiro and hit him in the face and chest, until Slayer pulled Denney off Loureiro. When Loureiro saw Denney reach into his pocket for what looked like a knife, Loureiro pulled out his knife and stabbed Denney. Loureiro stabbed Denney multiple times as Denney continued to approach Loureiro.

After subduing Denny by stabbing him, Loureiro left the alleyway to get help for Denney. Loureiro walked for five minutes until he saw a police vehicle. He did not tell the police that Denney was in critical condition because he was afraid the police would arrest him.


B.    *The Charges*

The People charged Loureiro with attempted premeditated murder (Pen. Code, §§ 187, subd. (a), 664), and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). The People further alleged that Loureiro personally used a deadly or dangerous

4

weapon in the commission of a felony or attempted felony, within the meaning of Penal Code section 12022, subdivision (b)(1), and that Loureiro personally inflicted great bodily injury on Denney, within the meaning of Penal Code section 12022.7, subdivision (a). At some point before trial, the court struck the premeditation allegation.

### C. *The Hearsay Objection*

At the beginning of the trial, Loureiro made a motion to exclude the statement overheard by Soderbergh, "All that for 10 fucking dollars?" The People argued the statement was admissible under the spontaneous statement exception to the hearsay rule (Evid. Code, § 1240) and the contemporaneous statement exception to the hearsay rule (Evid. Code, § 1241). The trial court was initially inclined to grant the motion to exclude the statement, both because the spontaneous statement and contemporaneous statement hearsay exceptions urged by the People did not apply, and under *Crawford v. Washington* (2004) 541 U.S. 36.[1]

The court revisited the issue during the trial. Following an off-the-record discussion, the People argued *Crawford* did not apply because the statement was not testimonial. The People further argued that the spontaneous statement exception applied because the statement was made while Loureiro and Slayer were retreating from the scene of the crime. The court noted that the evidence indicated there were no more than three or four minutes between the incident and the statement, which supported the prosecutor's argument that the short passage of time weighed in favor of applying the spontaneous statement exception.

---

[1] Loureiro argued that admitting the statement would violate his Sixth Amendment right of confrontation under *Crawford v. Washington* (2004) 541 U.S. 36. Admission of hearsay that is testimonial in nature violates the Sixth Amendment where the declarant is unavailable to testify at trial and defendant had no prior opportunity to cross-examine the declarant. Testimonial statements include statements made at a preliminary hearing, before a grand jury, at a prior trial, and during police interrogations. (*Id.* at p. 68.)

Counsel for Loureiro requested a preliminary hearing pursuant to Evidence Code section 402 so that Soderbergh could testify about the circumstances surrounding how he heard the statement. After meeting with Soderbergh during a recess, however, counsel for Loureiro changed her position on the need for an Evidence Code section 402 hearing because the distance between where Soderbergh heard the statement and where Loureiro stabbed Denney was only six feet. When the trial court asked if she was withdrawing her objection to the admissibility of the statement, counsel for Loureiro stated, "I will submit on the court's ruling." The trial court overruled the objection.

D.     *The Verdict*

The jury found Loureiro guilty of both charges. The jury also found true the allegations that Loureiro personally used a deadly and dangerous weapon and that he personally inflicted great bodily injury on Denney. The trial court sentenced Loureiro to an aggregate prison term of 11 years. Loureiro timely appealed.

**DISCUSSION**

Soderbergh testified at trial that he heard a male voice say, "All that for 10 fucking dollars?" Loureiro argues that the trial court abused its discretion in admitting this statement under the spontaneous statement exception to the hearsay rule. (Evid. Code, § 1240.)

A.     *Standard of Review*

Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a); see *People v. Seumanu* (2015) 61 Cal.4th 1293, 1307.) An out-of-court statement not offered to prove the truth of the matter asserted is not hearsay. (*People v. Ervine* (2009) 47 Cal.4th 745, 775-776.) "Hearsay is inadmissible unless it qualifies under some exception to the hearsay rule." (*People v. DeHoyos* (2013) 57

6

Cal.4th 79, 132; see Evid. Code, § 1200, subds. (a), (b).) Under Evidence Code section 1240, evidence of a statement is not inadmissible hearsay if the statement "(a) [p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) [w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.)

We review for abuse of discretion the trial court's ruling to admit evidence under the spontaneous statement exception. (*People v. Merriman* (2014) 60 Cal.4th 1, 65; see *People v. Loy* (2011) 52 Cal.4th 46, 65.) And, even if a court abuses its discretion in admitting hearsay statements, "'we will affirm the judgment unless it is reasonably probable a different result would have occurred had the statements been excluded.'" (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1526.)

B.  *The Trial Court Did Not Abuse Its Discretion in Admitting the Statement Overheard by Soderbergh*

"'A statement may be admitted, though hearsay, if it describes an act witnessed by the declarant and "[w]as made spontaneously while the declarant was under the stress of excitement caused by" witnessing the event.'" (*People v. Riccardi* (2012) 54 Cal.4th 758, 832, disapproved on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216; see Evid. Code, § 1240.) "'"To render [statements] admissible [under the spontaneous declaration exception] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it."'" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 809-810; accord, *People v. Gonzalez* (2016) 246 Cal.App.4th 1358, 1372, review granted July 13, 2016, S234377.) "A statement meeting these requirements is 'considered trustworthy, and admissible at trial despite its hearsay character, because "in the stress of nervous excitement, the reflective faculties may be stilled and the utterance

7

may become the instinctive and uninhibited expression of the speaker's actual impressions and belief." ' " (*People v. Merriman*, *supra*, 60 Cal.4th at p. 64.)

"A number of factors may inform the court's inquiry as to whether the statement in question was made while the declarant was still under the stress and excitement of the startling event and before there was 'time to contrive and misrepresent.' [Citation.] Such factors include the passage of time between the startling event and the statement, whether the declarant blurted out the statement or made it in response to questioning, the declarant's emotional state and physical condition at the time of making the statement, and whether the content of the statement suggested an opportunity for reflection and fabrication." (*People v. Merriman*, *supra*, 60 Cal.4th at p. 64.) These factors are significant only as an indicator of the mental state of the declarant, and no single factor or combination of factors is dispositive. (*Ibid.*)

" 'Whether the requirements of the spontaneous statement exception are satisfied in any given case is, in general, largely a question of fact. [Citation.] The determination of the question is vested in the court, not the jury.' " (*People v. Ramirez*, *supra*, 143 Cal.App.4th at p. 1523.) "On appeal, determination of preliminary facts by the trial court made in the course of deciding the admissibility of hearsay evidence will be upheld if supported by substantial evidence." (*People v. Riccardi*, *supra*, 54 Cal.4th at p. 831.)

The statement Soderbergh heard satisfies the first requirement: the stabbing was an occurrence startling enough to produce nervous excitement and render a subsequent utterance spontaneous and unreflecting. Loureiro does not argue otherwise.

The statement also satisfied the second requirement that the statement was made before the declarant had time to contrive and misrepresent and when the declarant was still under the stress of the excitement. Whether the speaker was Loureiro or Slayer,[2] the statement was made as the two of them ran from the scene where the stabbing occurred.

---

[2]    If Loureiro were the speaker, the statement would also be admissible as a party admission under Evidence Code section 1220. (See *People v. Cortez* (2016) 63 Cal.4th 101, 125.)

The passage of time between the startling event, the stabbing, and the statement, was no more than a few minutes. Moreover, the statement was not in response to questioning, but was blurted out as the two men hastily retreated from the crime scene. Soderbergh also testified the speaker sounded surprised or regretful, and made the statement with an inflection in his voice, as if asking a question. There was substantial evidence to support the trial court's implied finding that "the statement in question was made while the declarant was still under the stress and excitement of the startling event and before there was 'time to contrive and misrepresent.'" (*People v. Merriman*, *supra*, 60 Cal.4th at p. 64.)

Finally, with respect to the third requirement, the statement related to the circumstance of the occurrence preceding it. Both versions of the incident between Denney and Loureiro began with a demand for money that led to a violent confrontation. While the statement is ambiguous on the question whether Loureiro was the aggressor or stabbed Denney in self-defense, there is no dispute that the remark referred to the confrontation between Loureiro and Denney. Therefore, the statement satisfied the third requirement for a spontaneous statement.

Therefore, substantial evidence supports the trial court's findings on all three requirements of the spontaneous statement exception to the hearsay rule. The trial court did not abuse its discretion in admitting Soderbergh's testimony of the statement he heard from his balcony.

Loureiro contends that the trial court abused its discretion by admitting the out-of-court statement because Soderbergh was unable to identify whether Loureiro or Slayer said, "All that for 10 fucking dollars?" The spontaneous statement exception, however, does not require that the witness identify the declarant. (See *People v. Anthony O.* (1992) 5 Cal.App.4th 428, 436 (*Anthony O.*) [a statement qualifying as an excited utterance does not require "the declarant be identified"]; *People v. Provencio* (1989) 210 Cal.App.3d 290, 301-302 (*Provencio*) [hearsay statement was admissible under Evidence Code section 1240 where the declarant made the statement under the "stress of excitement caused by such perception," even though "the identity of the . . . (the hearsay declarant)

9

was unknown"]; see also *People v. Gutierrez* (2000) 78 Cal.App.4th 170, 177-178 [piece of paper with license plate number on it given to witness by an unidentified man was admissible under spontaneous statement exception to hearsay rule].)

Loureiro argues that *Anthony O.* is distinguishable because in that case there was no uncertainty about the gender of the declarant or whether the declarant was a perpetrator.[3] A statement is admissible under Evidence Code section 1240, however, as long as it appears """"in some way, at least, and with some degree of persuasive force" that the declarant was a witness to the event to which his utterance relates.'" (*Provencio*, *supra*, 210 Cal.App.3d at p. 302.) Here, there is substantial evidence that the two possible declarants, Loureiro and Slayer, were present and perceived the startling event that gave rise to the spontaneous statement.

Loureiro attempts to distinguish *Provencio* on the ground that the statement in that case "was a fairly straightforward excited utterance" whose "reliability was particularly clear, in that [ ] the child [making the statement] pointed and said, 'There goes Angel,' [and] the victim testified he himself saw Angel Provencio fleeing the scene." The court in *Provencio* held that the statement was admissible under Evidence Code section 1240 because the facts surrounding the case were such that, "the only reasonable inference is that the hearsay declarant (the unidentified child) actually perceived the exciting event at the time announced." (*Id.* at p. 303.) As in *Provencio*, the evidence here indicates both Loureiro and Slayer were present during the attack and "actually perceived" the confrontation between Loureiro and Denney.

---

3      Loureiro contends Soderbergh originally told police Loureiro's girlfriend made the hearsay remark. Nothing on the record supports this contention. Both at the preliminary hearing and at trial Soderbergh testified one of the two men (Loureiro or Slayer) made the remark.

C.	*Any Error in Admitting the Statement Was Harmless*

The standard of prejudice applicable to the erroneous admission of hearsay evidence is the standard in *People v. Watson* (1956) 46 Cal.2d 818.  (See *People v. Smith* (2016) 248 Cal.App.4th 794, 830 ["[t]he standard applicable to state law error in the admission of hearsay is the standard announced in *Watson*"]; accord, *People v. Seumanu*, *supra*, 61 Cal.4th at p. 1308.)  Under this standard, "'[w]hen the court abuses its discretion in admitting hearsay statements, we will affirm the judgment unless it is reasonably probable a different result would have occurred had the statements been excluded.'" (*People v. Ramirez*, *supra*, 143 Cal.App.4th at p.1526.)  "''''We have made clear that a "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.'''''"  (*People v. Smith*, *supra*, 248 Cal.App.4th at p. 811.)

The statement, "All that for 10 fucking dollars," was somewhat ambiguous, and its probative value was marginal.  Both Loureiro and the People used the statement to support their version of the circumstances surrounding the incident between Loureiro and Denney.  Contrary to Loureiro's assertion, the hearsay remark was not central to the People's case, and the prosecutor mentioned the statement only briefly during closing argument.

Conversely, the evidence of Loureiro's guilt was strong.  Denney called the police minutes after Loureiro stabbed him, reporting that a man had attacked him.  There was also considerable evidence corroborating Denney's version of the fight and contradicting Loureiro's theory of self-defense.  This evidence included the pieces of the broken cell phone found at the crime scene, the absence of a weapon other than Loureiro's knife, and Loureiro's flight from the scene and avoidance of police officers, despite his testimony that he left Denney to get help.  Loureiro's actions betrayed any intent consistent with self-defense.  Because the hearsay statement's probative value was marginal and the evidence of Loureiro's guilt was strong, there is no reasonable probability that the

11

outcome of Loureiro's trial would have been different had the trial court excluded the statement overheard by Soderbergh. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)[4]

## DISPOSITION

The judgment is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.                                           GARNETT, J.[*]

---

[4]     Loureiro also argues that admitting the hearsay remark violated his federal constitutional rights of due process. However, "[b]ecause the evidence was properly admitted under Evidence Code section 1240, its admission did not deprive [Loureiro] of due process." (*People v. Merriman*, *supra*, 60 Cal.4th at p. 67.)  The admission also did not violate the confrontation clause because the statement was not testimonial. (See *People v. Barba* (2013) 215 Cal.App.4th 712, 721.)

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.